# Wytheville.

## BETHEL & COMPANY v. SALEM IMPROVEMENT COMPANY.

### July 9, 1896.

#### Absent, Harrison, J.

1. CONTRACTS—*Failure of Plaintiff to Perform—Prospective Profits—Measure of Damages for Failure to Pay Money.*—In an action to recover for the price of bricks manufactured under contract, and also to recover prospective profits on other bricks contracted to be manufactured, but which the plaintiff was unable to manufacture by reason of the failure of the defendant to pay for those already manufactured, the plaintiff can only recover for the bricks already manufactured the contract price thereof, with legal interest from the time payment should have been made. Not having performed his contract, the plaintiff cannot recover prospective profits on the bricks not manufactured. The measure of damages for the breach of a contract to pay money is, with a few exceptions, the principal sum, with legal interest thereon from the time the payment was due.

Error to a judgment of the Circuit Court of Roanoke county, rendered April 8, 1893, in an action of *covenant* wherein the plaintiffs in error were the plaintiffs, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*G. W. & L. C. Hansbrough* and *Scott & Staples*, for the plaintiffs in error.

*R. H. Logan, A. B. Pugh* and *Phlegar & Johnson*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

On the 20th of January, 1891, the Salem Improvement
Company entered into a contract, under seal, with Geo. W.
Bethel & Co., by which the latter agreed to make and burn
for the former 1,500,000 bricks, during the summer of 1891,
the Salem Improvement Company agreeing to pay $6.50 per
thousand for the bricks in the ˙kiln, provided "the brick
should not run less than two-thirds well burned, hard brick;
that the brick are to be examined when the kiln is burned,
and if approved by the Salem Improvement Company, it is
to pay Geo. W. Bethel & Co. for three-fourths of their value,˙
at the price aforesaid, but if upon opening the kiln and haul-
ing the brick they are found to be imperfect, and not equal
to the standard above named, the Salem Improvement Com-
pany shall have the power of rejecting them."

Geo. W. Bethel & Co. under this contract burned 803,491
bricks, and received therefor $3,212.31.

A disagreement having arisen between the parties as to
their rights under this contract, G. W. Bethel & Co., on the
5th day of March, 1892, brought an action of covenant
against the Salem Improvement Company, and after setting
out in their declaration the terms of the contract just stated,
and referring to the contract itself for the complete provis-
ions thereof, they aver that, except in so far as they have
been prevented by the defendant, they have always well and
truly performed all things in the said contract on their part
to be done, according to its tenor and effect, but that the de-
fendant hath not hitherto performed and kept its covenants
in the said contract contained, according to the true intent
and. meaning of the same, "in this, that after the said plain-
tiffs had, according to the tenor of the contract aforesaid,
manufactured 803,491 bricks, and when they were proceed-
ing with the manufacture of the residue of the said 1,500,000
bricks, the said defendant notified the plaintiffs that it would
not purchase any more of the said bricks than had already
been made, and to discontinue the manufacture of the same,

and that the said defendant, although the said 803,491
bricks, made according to this contract, were kilned on the
said premises according to the provisions of the said contract,
the said defendant hath not paid to the said plaintiffs the
sum of $6.50 per thousand, for 1,500,000 bricks above men-
tioned, nor any part of said sum, except the sum of $3,212.31,
whereby the plaintiffs have been damaged on account of the
failure to pay for the bricks actually manufactured as afore-
said, by the outlay necessarily incurred by them in the pre-
paration for the manufacture of the residue of the said
bricks, and the failure of the defendant to allow the plain-
tiffs to continue the manufacture of the residue of the said
1,500,000 bricks, or to pay the plaintiffs their reasonable
profit, to-wit: the sum of $3.00 per thousand for the same to
be manufactured."

The second count after setting out the contract, sets out
the breach as follows: "In this, that the said defendant, as
soon as the said plaintiffs had manufactured the 803,491
bricks mentioned in the first count, and when they had gone
to the expensive preparation to manufacture the residue of
the 1,500,000 aforesaid, and were proceeding with the manu-
facture of the same, the said defendant notified the said
plaintiffs not to manufacture any more bricks than they had
already manufactured, and that it would not purchase, nor
pay for any bricks thereafter manufactured, and the said de-
fendant, although the said plaintiffs had manufactured and
kilned the said 803,491 bricks, which were not less than two-
thirds well burned, hard brick, and had, in every way, com-
plied with the said contract on their part to be performed,
except as aforesaid, hath not paid to the said plaintiffs the
sum of $6.50 per thousand for 1,500,000 bricks as aforesaid,
or any part thereof, except the sum of $3,212.31, in the first
count mentioned."

The third count after reciting the contract, states the
breach thereof in the following language: "In this, that

the said defendant hath not purchased of the said plaintiffs
the said 1,500,000 bricks, nor paid to the said plaintiffs the
said sum of $6.50 per thousand for said 1,500,000 bricks,
whereby the said plaintiffs were put to heavy costs and ex-
penses, and incurred heavy losses in and about performing
the covenant in the said contract, on their part to be per-
formed, to-wit: the sum of $4,000.''

To this declaration the defendant filed several pleas, about
which no question was made, and upon these pleas the
plaintiffs joined issue; and thereupon a jury was impaneled,
which, after hearing the evidence and instructions from the
court, found a verdict for the plaintiffs and assessed their
damages at the sum of $4,000. The defendant moved for
a new trial; which the court, after consideration, granted,
upon the ground, as stated in its order, that it had erro-
neously instructed the jury. To the ruling of the court
setting aside the verdict, the plaintiffs excepted.

At a subsequent term the whole matter of law and fact
arising upon the case was submitted to the judge on the
evidence given at the former trial as the same appears in
the bill of exceptions filed at that term. Thereupon the
court proceeded to give judgment for the plaintiffs in the
sum of $1,403.04, with legal interest thereon from January
1, 1892, till paid, and their costs therein expended. The
plaintiffs again excepted, and tendered their bill of excep-
tions, which was allowed by the court; whereupon the plain-
tiffs applied to one of the judges of this court for a writ of
error, which was granted.

The errors assigned here are first, to the action of the court
in setting aside the verdict rendered in behalf of the plaintiffs;
their contention being that there was no error in the in-
structions given by the court, and that it should have given
judgment in their favor upon the verdict as rendered by the
jury; and, secondly, that it was error in the court to give its
final judgment for $1,403.04, but that it should have been

for the sum of $3,746.07, with interest from January 1, 1892, till paid.

The instruction given by the court, and which it afterwards decided was erroneous, is as follows:

" The court instructs the jury that if they believe from the evidence that the plaintiffs, up to the time he stopped the manufacture of bricks, had been manufacturing them according to the requirement of the contract, or that the brick so manufactured had been accepted by the defendant, and that the defendant refused and failed to pay the plaintiffs the sums of money, if any, due them under said contract, as the said sums became due, and by reason of such failure, the plaintiffs were forced to stop, and did stop, the manufacture of bricks, then the plaintiffs are entitled to recover for the price of the bricks manufactured by them, according to the said contract, and for the profit on the difference between the number of the bricks so manufactured by them, and 1,500,000 bricks, manufactured according to the terms of the contract, and, in estimating such profit, the jury shall place the bricks at the price fixed in the said contract, and deduct therefrom the cost of said bricks, as they shall believe such cost to be from the evidence."

This instruction is predicated upon the performance on the part of the plaintiffs of the conditions set out in their covenant, and upon the failure of the defendant to pay to the plaintiffs the sums of money due them under the contract as the same became payable.

It is claimed by the defendant in error that this instruction was erroneous for two reasons: First, that there was no such issue presented by the pleadings, the breach laid in the declaration being that the defendant had failed to perform the covenants in the said contract on its part to be performed, in this " that the said defendant notified the plaintiffs that it would not purchase any more of the said bricks than had already been made, and to discontinue the manufacture of the same.

The theory upon which this action was brought, as appears from the declaration, was that the plaintiffs were entitled to recover because the defendant had broken its contract, not by failure to pay for the bricks manufactured, but by its notification to the plaintiffs that it would not purchase any more of the bricks than had already been made, and to discontinue the manufacture of the same. Had this breach been established by the evidence, there is abundant authority to warrant the verdict and judgment for the plaintiffs upon proper instructions; but, as has already been observed, the instruction under consideration is predicated solely upon the performance by the plaintiffs of the covenants and conditions to be performed on their part, and the refusal and failure of the defendant to pay to the plaintiffs such sums of money as were due them under the contract, as the same became payable. The failure to pay the money is the cause alleged in the instruction that forced the plaintiffs to stop the manufacture of the bricks, and which entitles the plaintiffs to recover, not only for the bricks manufactured by them according to said contract, but for the profit on the difference between the number of the bricks so manufactured by them and the 1,500,000 bricks manufactured according to the terms of the contract, to be ascertained by placing the bricks at the price fixed in the contract and deducting therefrom the cost of the bricks as shown by the evidence.

For the breach of a contract to pay money, no matter what the amount of inconvenience sustained by the plaintiff, the measure of damages is the interest on the money only. Wood's Mayne on Damages (1st Amer. Ed.), p. 15. That this is the rule is admitted. That there are exceptions to it may also be conceded, and it is earnestly contended on behalf of plaintiffs in error that the case before us comes within the exception, and not within the rule. In support of its contention the case of *Masterton* v. *The Mayor, &c. of*

*Brooklyn,* 7 Hill 61, is relied upon.   That was an action of covenant on an agreement whereby the plaintiffs undertook to furnish, cut, fit, and deliver all the marble to build the city hall of Brooklyn, to be of the best kind of white marble from Kain & Morgan's quarry, for which the defendants agreed to pay a certain sum in instalments, payable at different stages in the erection of the building.   The defendants suspended work on the building for the want of funds, and refused to receive or pay for any more marble.   This was the breach complained of.   Part of the marble had at that time been delivered and paid for, another part was ready for delivery, but the greater part had not yet been procured and prepared for delivery.   The plaintiffs, as a part of their case, put in evidence articles of agreement between them and Kain & Morgan made on the faith of the agreement between the plaintiffs and the defendants, whereby Kain & Morgan covenanted to furnish, in blocks prepared for cutting, all the marble required to fulfill the plaintiffs' contract, and the plaintiffs agreed to pay them a certain sum therefor out of the sum agreed to be paid by the defendants, and in similar instalments, but expressly stipulated that the said Kain & Morgan should not look to the plaintiffs, except to the funds as supplied by the defendants.  ·

"The circuit judge instructed the jury that the plaintiffs were entitled to recover the profits which would have accrued to them from the actual performance of the contract, and that, as the rough marble was to be procured from Kain & Morgan's quarry, the contract was to be deemed a part of the performance of the plaintiffs' contract, and the plaintiffs were entitled to recover from the defendants the damages for which they would be liable to Kain & Morgan for that contract.   There was a verdict for the plaintiff for a large amount, greatly exceeding the loss of the marble actually on hand.   The defendants appealed."

It is obvious that the ground of complaint here was not

the failure to pay for the marble already cut and delivered, but the ground of complaint and the breach alleged was that the defendant refused to receive or pay for any more marble, want of funds being alleged as the cause. The only item of damage in which the failure on the part of the defendants to pay money cuts any figure, was the damage growing out of the contract with Kain & Morgan, with whom plaintiffs had contracted and whom they were to pay in instalments similar to the instalments due the plaintiffs from the defendants, but the Circuit Court was reversed in the Court of Appeals for having allowed this damage to be computed in the verdict, Chief-Justice Nelson saying: "I am unable to comprehend how these can be taken into the account, or become the subject matter of consideration at all, in settling the amount of damages to be recovered for a breach of the principal contract." So this may be laid out of the case altogether. Said the Chief Justice: "The damages for the marble on hand, ready to be delivered, was not a matter in dispute on the argument. * * * * * * * * * * The contest arises out of the claim for damages in respect to the remainder of the marble which the plaintiffs had agreed to furnish, but which they were prevented from furnishing by the suspension of the work in July, 1837. This portion was not ready to be delivered at the time the defendants broke up the contract, but the plaintiffs were then willing and offered to perform in all things on their part, and the case assumes that they were possessed of sufficient means and ability to have done so."

Not that the means and ability were to be obtained from the defendants in the form of the payment of the instalments as the work became due, as provided in the contract, but that the plaintiffs were possessed of sufficient means and ability, independent of what they were to receive from the defendants, to perform all things on their part to be performed had they been permitted to do so, but they were not

allowed to perform the contract, the defendant refusing to receive or pay for any more marble, but it was that refusal alleged and proved which constituted the breach for which the plaintiffs were in that case permitted to recover. So far from being an authority for the plaintiffs, it seems to us that it can be relied upon to establish the contrary doctrine.

The case of *McElwee* v. *Bridgeport Land & Imp. Co.*, reported in 54 Fed. Rep. at page 627, is upon its face a mere *dictum* upon the point under consideration. In that case a land company, in order to procure the erection of a mill near its land, contracted to pay a bonus to the manufacturer, a fixed sum to be paid when the latter was ready to begin work thereon, and the rest in instalments as the work progressed. The first instalment was promptly paid, but two others were earned and not paid, whereupon the manufacturer ceased work, and sued for damages for breach of contract. It appeared that his entire outlay and expenses were less than the first instalment received, and there was no proof of loss or profits. Held, that he could recover nothing.

The proposition upon which the plaintiffs in error relies here as stated hypothetically by the court in that case, was not necessary to a decision of the case, and is a mere *obiter dictum*.

*Commissioners of the Sinking Fund* v. *Kendall Bank Note Co.,* 79 Va., 563 was a case where, after having entered into a contract with the defendant in error, the plaintiff in error, without any sufficient cause, revoked the contract which it had made. Thereupon the Kendall Bank Note Co. sued in the Circuit Court of the city of Richmond, obtained a judgment for a large sum, and the Commissioners of the Sinking Fund brought it upon a writ of error to this court. Judge Lacy, in delivering the opinion, at page 573 says: "The plaintiffs can recover for prospective profits when they are prevented from going on by being ordered to desist from

the work, or by the omission to perform some condition precedent to its further prosecution by the other party." The Board of Sinking Fund Commissioners had cancelled the contract, and forbidden the Kendall Bank Note Co. to proceed further in the execution of it. Clearly, therefore, the Bank Note Co. had a right to recover for whatever profits would reasonably accrue upon its contract. There is not one word said in that case about the failure to pay money as constituting the cause of action, or that the mere failure to pay money would in any case entitle the plaintiff to recover any damages in addition to the principal sum with lawful interest thereon. It is conceded, however, that there are such cases. A familiar example of such a case is, that a banker is liable to damages for the refusal to pay a check. *Marzetti* v. *Williams,* 1 Barn. & Adol. 415. See also *Tuers* v. *Tuers,* 100 N. Y. 196.

Many instances of a like character might be given, but we have seen no case which will sustain the instruction under consideration. It is the ordinary case of a failure to comply with a contract to pay money at a stipulated time. In such cases the measure of damages for the breach of the contract is the principal sum due, and legal interest thereon. To make a defendant responsible for the profits which might have accrued to the plaintiffs by the use of the money, in addition to the interest, would be harsh and oppressive, and should not be sanctioned by the court, unless the plaintiffs can bring their case within some well recognized exception to the rule.

For the foregoing reasons, we are of opinion that the Circuit Court did not err in setting aside the verdict and granting a new trial. We are also of opinion that there was no error in the judgment rendered by the court, which is fully supported by the facts shown in evidence, and it is affirmed.

*Affirmed.*