GEORGE BEATTY and Another v. HOWE LUMBER COMPANY.

July 14, 1899.

Nos. 11,543—(94).

**Contract—Payment in Instalments—Breach.**

Where a contract for cutting, booming, and delivering logs provides for payment in instalments, a failure to pay an instalment when due is not such a breach of the entire contract as to authorize the contractor to refuse to proceed further, and to recover the profits which he would have earned had the contract been fully performed on his part. In such case the contractor may abandon the work, and recover for what has already been done under it; but mere nonpayment of money due on such instalment is not, of itself, such denial of the rights of the contractor to continue the performance of the services under the contract.

Action in the district court for St. Louis county to recover $16,136.48 for breach of contract. From an order, Ensign, J., overruling a demurrer to the second and third causes of action in the complaint, defendant appealed. Reversed.

*W. G. Bonham* and *Francis W. Sullivan,* for appellant.

At most the action of plaintiffs in abandoning the contract amounted to a rescission because of defendant's alleged breach. If plaintiffs elected to rescind, the contract cannot serve as a basis for a claim for future profits. The right to future profits proceeds on the theory that the contract is in force; and to recover, where performance is a condition precedent to the right to recover such profits, plaintiffs must aver and prove performance or excuse for nonperformance. Lake Shore v. Richards (Ill.) 32 N. E. 402; U. S. v. Behan, 110 U. S. 338. If, indeed, the breach had been such as to prevent continuing performance, plaintiffs could treat the breach as putting an end to the contract for purposes of performance, and sue for the profits they might have realized. In such case the breach must have been such as to make it physically impossible to

continue performance, or performance by the defaulting party must have been a condition precedent to performance by the other. Palm v. Ohio, 18 Ill. 217; County v. Overholt, 18 Ill. 223; Cox v. McLaughlin, 54 Cal. 605; Lake Shore v. Richards, supra; Wharton v. Winch, 140 N. Y. 287; Moore v. Taylor, 42 Hun, 45, 49 N. Y. Sup. Ct. 45. Under the most unfavorable view of the law, there must have been such acts on part of the defaulting party as to amount to repudiation and refusal to be bound by the contract. Mere nonpayment of an instalment is not basis for an action for future profits, since it is neither prevention nor repudiation. Palm v. Ohio, supra; County v. Overholt, supra; Cox v. McLaughlin, supra.

As to plaintiffs' contention that it was understood that it would be necessary for them to secure supplies, etc., for carrying on the work, it is enough to say that the contract expresses no such understanding. Doud, Sons & Co. v. Duluth Milling Co., 55 Minn. 53. Special damages cannot be recovered unless pleaded.

*Baldwin & Baldwin,* for respondents.

The understanding of the parties at the time of making a written contract may be shown to explain the reason for a provision, though not to vary the terms. Palmer v. Breen, 34 Minn. 39; Frohreich v. Gammon, 28 Minn. 476; Liljengren F. & L. Co. v. Mead, 42 Minn. 420. By reason of defendant's refusal to perform, plaintiffs were prevented from completing the contract. It matters not what the breach was, so long as it was a breach of an important covenant. Palmer v. Breen, supra; Nichols v. Scranton, 137 N. Y. 471. The third cause of action at least states a cause for nominal damages. Merriam v. Pine City L. Co., 23 Minn. 314.

BUCK, J.

This action is brought to recover damages for the violation of the terms and conditions of a written contract, made between the parties, and dated September 8, 1897, a copy of which is set out and made a part of the complaint.

The substance of the contract is that plaintiffs, the Beattys, as parties of the first part, agreed with the Howe Lumber Company, as party of the second part, to cut a certain amount of pine lumber, and boom and deliver to the latter, in Vermilion Lake, as early as

77 M.—18

April 10, 1898, all merchantable pine timber on and belonging to certain land in St. Louis county, Minnesota, for which said lumber company agreed to pay plaintiffs the sum of $4 per thousand for all Norway logs, and $6.50 per thousand for all white pine logs, payments to be made as follows: Two dollars per thousand on the 25th day of the month following the month in which said logs are delivered; an additional $1 per thousand April 10, 1898; and the balance of the purchase price July 10, 1898. But, as a small portion of the logs were to be delivered at a small lake elsewhere, the lumber company was to retain and hold back 25 cents per thousand feet of the first payment of the purchase price of said logs till they were delivered at a point known as the "Big White Rock," where the lumber company would fasten its tug to the raft, and the final payment was not to be made till said logs were delivered at said point. The contract contains other provisions as to length of logs, doing the work, quality of logs, furnishing necessary chains, breaking of booms, scaling of logs, and lienable claims. It also contained this provision:

"It is further agreed: Whereas the second party has looked over certain lands, to wit, section 36, township 64, range 19, and southeast quarter of section 26, in township 64, range 19, with a view to procuring the pine on said lands: If the second party procures the logs on both or either of said tracts, then the first party is to cut, boom, and deliver said logs to second party within times hereinbefore stated for the sum of $4.50 per thousand feet; payments to be made the same as hereinbefore stated. If the first party procures the logs on both or either of said tracts, then they are to cut, boom, and deliver said logs to second party within the same times hereinbefore stated, and second party to pay therefor the sum of $6.50 for white pine and $4.50 for Norway, at same time and in same amounts as hereinbefore stated."

After making said agreement the defendant procured the pine on said section 36 and section 26, and notified plaintiffs thereof, and requested plaintiffs to cut, boom, and deliver said pine pursuant to the terms of said agreement; and plaintiffs entered into the performance thereof, and continued to cut, boom, and deliver said pine, and cut and delivered more than a million feet thereof, and on February 25, 1898, there became due on said contract to plaintiffs,

$1,750, when plaintiffs demanded that the amount due for the pine delivered during the month of January, 1898, be calculated and ascertained, and plaintiffs paid therefor, which defendant refused to do, and thereupon plaintiffs abandoned the contract.

There are three causes of action alleged in the complaint. The first one has been answered by the defendant on the merits, and the issue thereby formed is still pending.

For the second cause of action plaintiffs reallege so much of the first cause of action as we have herein recited, and further allege:

"That at the time of entering into said agreement, and at all times, it was understood between plaintiffs and defendant that it would be necessary for plaintiffs to secure large quantities of supplies necessary for carrying on the work, and that it would be necessary for plaintiffs to secure such supplies on their credit, and to pay for the same to the persons from whom they should be purchased with the moneys agreed by defendant to be paid to plaintiffs on the 25th of each month as aforesaid, and for that reason it was provided by the terms of said agreement between plaintiffs and defendant that defendant should make the payments provided for by said agreement on the 25th day of each month for all pine delivered during the preceding month, and accordingly plaintiffs did purchase on their credit, prior to said 25th day of February, 1898, large quantities of supplies necessary for carrying on said work, and agreed to pay for said supplies on the 25th day of February, 1898; and by reason of defendant's refusal to pay to plaintiffs the amount due them on February 25, 1898, as aforesaid, plaintiffs were unable to pay for the supplies which had been purchased by them as aforesaid prior to February 25, 1898, and were unable, by reason thereof, to purchase or procure supplies necessary for continuing said work of cutting, booming, and delivering said pine from and after February 25, 1898; and by reason of defendant's failure to pay to plaintiffs the amount due them as aforesaid on February 25, 1898, and the inability of plaintiffs to procure supplies necessary for carrying on said work after said date, plaintiffs could not continue after said February 25, 1898, to perform said work, and were compelled to, and did, thereupon cease to cut and deliver said pine, except that, for the purpose of saving and preserving certain pine logs which were then lying in the woods, plaintiffs continued for a period to haul said last-mentioned logs to the water with a few teams and men."

The plaintiffs further allege that, by reason of the failure of defendant to pay them said sum of $1,750 due them, they were prevented from completing said contract, as they otherwise would have

done, on February 25, 1898, and they thereby abandoned said contract, and have never since performed any service upon it, and that by reason of defendant's breach of said contract they have damages, in the loss of profits which they would have made, amounting to several thousand dollars.

The third cause of action sets out that, after plaintiffs abandoned the contract, they owed various sums of money to laborers who had been employed by them in the performance of the contract prior to February 25, 1898; that, after said time, for the purpose of preserving plaintiffs' credit, and preventing the filing of liens upon the logs, it was agreed between plaintiffs and defendant that, if plaintiffs would give an order to pay said labor claims, defendant would forthwith pay the same, and charge the same to the amount claimed to be due from defendant to plaintiffs for services theretofore rendered, and sued for in the first cause of action; that plaintiffs gave defendant an order to pay these claims, but plaintiffs allege, on information and belief, that defendant neglected to pay the claims, whereby plaintiffs' credit was greatly damaged, in the sum of $3,000.

Defendant demurred, separately, to the second and third causes of action set forth in the complaint, upon the ground, in each case, that they did not state facts sufficient to constitute a cause of action. The demurrers were argued in the lower court, and both were overruled. From the order overruling the demurrers, defendant appeals.

It is apparent that the main controversy is over the second cause of action, viz., for anticipated profits. The appellant insists that by the very terms of the written contract no such damages were contemplated by the parties at the time of the execution of said contract. The contract was made a part of the complaint, and its terms would control any inconsistent allegations in the complaint. Doud, Sons & Co. v. Duluth Milling Co., 55 Minn. 53, 56 N. W. 463. Certainly the contract itself does not show that at the time of entering into the contract it was understood between plaintiffs and defendant that it would be necessary for plaintiffs to secure large quantities of supplies necessary for carrying on said work. The contract speaks for itself. Its terms constitute the guide for each

party, with the obligations for each; but there is no specified liability therein stated in case of nonperformance, and the terms of the written contract cannot be changed or varied by what the parties are alleged to have understood or contemplated, other than is warranted by the terms of the contract; and hence the allegations of the complaint relative to such understanding are immaterial, and constitute no ground for a cause of action. Doud, Sons & Co. v. Duluth Milling Co., supra.

Did the mere fact that the defendant failed to pay the first instalment due February 25, 1898, create such a breach of the contract as to authorize the plaintiffs to recover anticipated profits on the unperformed part of the work?

It cannot be said that it anywhere appears in the complaint that defendant in any manner interfered with or prevented plaintiffs from proceeding with the work, and it is a fair inference from the allegations in the complaint that the defendant was anxious for them to continue work on and after February 25, 1898. There was no denial by defendant of the right of the plaintiffs to continue in the performance of the service, and no refusal on its part to be bound by the contract, and no consent to plaintiffs' abandonment of the contract; nor was there any refusal on the part of the defendant to receive the logs which plaintiffs might cut and deliver in the future under the terms of the contract. It is doubtless true that a failure to pay the instalment due was a breach of the terms of the contract, and they were not bound to wait for the defendant to make the payment, and plaintiffs then had the right to abandon the contract, or they might have continued to perform the services, and have brought suit for the instalments due. Although the plaintiffs abandoned the contract on the very day of the defendant's failure to pay them the instalments due, yet the defendant placed no obstacle in the way of their going on with the work, unless a failure to pay the instalment due can be so regarded. But there is nothing in the contract which makes a failure to pay an instalment due at a stated time a condition precedent to the further prosecution of the work, and which made its nonpayment such a violation of the contract as to authorize the other party to abandon the work, and sue upon it as for having been prevented from completing it

by the act of the party who had thus failed to perform such condition precedent; hence the law cannot infer such a consequence from the ordinary obligation to pay money at a particular time or upon the completion of a specified part. Palm v. Ohio, 18 Ill. 217.

Numerous other authorities sustain this position. In Wharton v. Winch, 140 N. Y. 287, 35 N. E. 589, it is said that, where a contract for a railroad construction provides for payment in instalments as the work progresses, a failure to pay an instalment when due is not such a breach of the entire contract as to authorize the contractor to refuse to proceed further, and to recover the profits which he would have earned had the contract been fully performed; and where an action is brought by the contractor before completion of the contract, to authorize a recovery of prospective profits, a willingness on his part to complete the work, and a refusal of defendant to be further bound by the contract, or an abandonment by him, must appear. In the case of Keeler v. Clifford, 165 Ill. 544, 46 N. E. 248, it is held that, upon nonpayment of an instalment due under a contract, the party entitled thereto may abandon the contract, and recover the amount actually due thereunder; but he cannot recover lost profits on abandonment, unless prevented by the other party from completing the contract. In Cox v. McLaughlin, 54 Cal. 605, it was held that a mere failure to pay money due upon the contract before the completion of the work does not constitute a prevention of the completion of the work. In Bethel v. Salem, 93 Va. 354, 25 S. E. 304, it is held that the loss of profits for the unperformed part of a contract cannot be included in the damages for breach of the contract by mere nonpayment for the part performance, even if that prevented further performance.

We think that these cases enunciate the correct rule. The effect of the default was to give the plaintiffs an immediate remedy to recover the stipulated amount, but this remedy was not inconsistent with their right to go on with the contract. It could make no difference with the legal liability of the defendant whether the plaintiffs were rich or poor. If they had been rich, or had ample means, it is evident, from the record, that they would or could have continued to perform the services; but if they were unable to go on with the work solely on account of their want of means, or because

of defendant's refusal to pay the instalment due according to the terms of the contract, the consequence of such failure is a question of law for the court upon the admitted or proven facts. And the rule of law which in some instances permits the innocent party to recover damages in the way of anticipated profits rests upon the fact that one party is prevented by the act of the other from realizing the benefit which the contract furnishes; but a denial of this right does not rest in the mere default in the payment of an instalment when it becomes due, especially when, as in this case, there is an entire absence in the contract of any legal liability contemplated by the parties as to damages for anticipated profits, and there was no denial of the legal right of the plaintiffs to proceed in the performance of the contract unaffected by the conduct or default of the defendant.

There is no merit in the third cause of action, the damages alleged being entirely too remote, and the order overruling defendant's demurrer to the second and third causes of action in the complaint is reversed.