# Wytheville.

## Colonna Dry Dock Company v. Colonna.

### June 11, 1908.

1. EQUITY—*Rehearing—Cumulative Evidence.*—It is not error for a trial court to refuse a rehearing of a case in order to enable a party to submit additional evidence where it appears that the additional evidence proposed to be submitted is merely cumulative and cannot possibly change the result.

2. SPECIFIC PERFORMANCE—*When Decreed—Case in Judgment.*—All applications for specific performance are addressed to the sound judicial discretion of the court regulated by established principles. The contract must not only be distinctly proved, but must be clearly and distinctly ascertained. It must be reasonable, certain, legal, and mutual, and upon a valuable or at least meritorious consideration, and the party seeking performance must not have been backward, but ready, desirous, prompt, and eager. In the case in judgment the evidence is plainly insufficient to prove the contract sought to be enforced with the degree of certainty required by law. The complainant sought to enforce a verbal alteration of a written option. Neither in the pleadings nor the evidence does he claim to be in a position to carry out the written option, and the evidence is insufficient to establish the alleged verbal alteration.

3. CONTRACTS—*Forfeitures—Liquidated Damages—Relief.*—If it is doubtful whether the provisions of a contract constitute a penalty or forfeiture on the one hand or liquidated damages on the other, courts of equity strongly incline to that construction which declares it to be a forfeiture or penalty, rather than liquidated damages, for if it be construed as a forfeiture or penalty jurisdiction will be entertained to prohibit the enforcement or the voluntary payment of the penalty or forfeiture, and the court will enforce the performance of the alternative contract if a proper case be made, but if it be construed as liquidated damages, the jurisdiction of a court of equity is at an end.

4. PENALTY—*Forfeitures—Liquidated Damages—Measure of Damages.*—If a contract contains several independent agreements for the breach of some of which there is no exact measure of damages, and for others, as for example the non-payment of money at a stated time, there is an exact standard, and the contract stipulates that a sum

certain shall be paid for the failure to comply with any or all of its provisions, the sum so stipulated to be paid will be held to be a penalty or forfeiture though denominated "liquidated damages" in the contract.

Appeal from a decree of the Circuit Court of Norfolk county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Riddleberger & Roper* and *W. L. Williams,* for the appellant.

*Brooke & Elliott* and *R. C. Marshall,* for the appellees.

Cardwell, J., delivered the opinion of the court.

On the 29th day of December, 1904, Jay C. Howell obtained from C. J. Colonna a written option contract, under seal, whereby Colonna covenanted and agreed that he would, at any time prior to the expiration of ninety days from the date of the contract, convey to Howell, by good and sufficient deed with general warranty, in which the wife of Colonna would unite, three certain tracts of land with improvements thereon, situated in Norfolk county, Virginia, the conveyance "to be for the price and sum of one hundred and eighty-five ($185,000) thousand dollars, payable as follows, to-wit: one-fourth of the purchase money to be paid in cash, twenty-five thousand ($25,000) dollars in stock of a company to be made up of the property herein named and that of B. A. Colonna, and the balance in twenty years after date with interest from date at the rate of six *per centum per annum* payable semi-annually, secured by deed of trust on the property, with the right of said Jay C. Howell or the company he may form to purchase the property to anticipate and pay off the bonds at any time before maturity."

A bond for the deferred payment was to be made by Howell or his assigns, secured by a first deed of trust upon the property conveyed by Colonna and wife, and they were to "deliver to him (Colonna) twenty-five thousand dollars of stock to be

issued at the par value of one hundred dollars a share on the basis of two hundred and twenty-five thousand dollars, including the B. A. Colonna and C. J. Colonna properties."

Other features of the contract are omitted from the foregoing statement, for the reason that upon those recited this controversy depends.

It was not the purpose of Howell in obtaining the said option to purchase and acquire title in himself to said properties of C. J. Colonna, but to interest capitalists and organize a joint stock company to which the option was to be assigned by him, the purpose of the organization to be the construction and operation of shipbuilding yards, wharves, dry docks, power plants, "and all things necessary to the operation of a general shipbuilding, repairing and dry dock business."

Accordingly, a charter was obtained by the "Colonna Dry Dock Company, Incorporated," with a maximum amount of capital stock of $200,000 and a minimum of $25,000, with the right to issue preferred and common stock to the amount of the maximum capital stock of the company; and, thereupon, Howell executed and delivered to the company the following assignment:

"Know all men by these presents, that I, Jay C. Howell, for and in consideration of the sum of one dollar and other considerations to me in hand paid, the receipt of which I hereby acknowledge, do hereby assign all my rights, title and interest to the option hereto attached, dated December 29, 1904, and any extensions of the same, and also in the receipt hereto attached, dated the 27th day of November, 1905, to the Colonna Dry Dock Company, Incorporated, a company operating under the laws of the State of Virginia.

"Witness my hand and seal this 28th day of November, 1905.                    "JAY C. HOWELL.   (Seal)."

Upon the completion of its organization and its acceptance of this assignment from Howell, the Colonna Dry Dock Com-

pany, Incorporated, sought to obtain from C. J. Colonna a conveyance of his three parcels of real estate mentioned and described in the option contract, which was declined by C. J. Colonna, on the ground mainly that the company had not acquired, as stipulated for in the option contract, the B. A. Colonna property, and the capital stock of the company to be issued was not as agreed in his contract; thereupon, the bill in this cause was filed by the Dry Dock Company against C. J. Colonna, to enforce specific performance, not of the written contract of option given to Howell the 29th day of December, 1904, in all of its details, but of a substituted parol contract, alleged to have been entered into by the defendant with Howell subsequent to the written contract of option, whereby he agreed to an elimination of the B. A. Colonna property from the list of the properties that were to be acquired by Howell or his assigns, which were to form the basis of the organization of the contemplated joint stock company.

To this bill Howell filed an answer, which he asked should be treated as a cross-bill, against C. J. Colonna and wife, in which, admitting as true nearly all of the averments in the original bill, it is alleged that the original option obtained from C. J. Colonna was from time to time renewed, so that it expired on the 20th day of November, 1905, but that upon the sale of the B. A. Colonna property to another purchaser, on or about June 5, 1905, he (Howell) informed C. J. Colonna of this fact, and that another piece of property had been secured instead of the B. A. Colonna property, C. J. Colonna agreeing that the property secured was in every respect suitable for such purpose; that as a matter of fact the B. A. Colonna property never constituted a consideration to C. J. Colonna, but he (Howell) inserted it in the option contract "to show the relation between the properties and his property in the premises;" "that seven days after the expiration of the said option a new contract was entered into with C. J. Colonna, to which old option reference was made for the purpose of obtaining a

description of the properties to be conveyed and the manner in which the same was to be paid for;" that C. J. Colonna not only agreed to the modification of said option, as set forth, but agreed to act as vice-president of the Colonna Dry Dock Company, then to be formed; and "that the said company should have a capital stock of two hundred thousand dollars ($200,000) instead of two hundred and twenty-five thousand, which reduction was made possible only by the fact that the said property of B. A. Colonna was no part of said agreement."

The "new contract" alleged to have been entered into seven days after the original option finally expired is as follows:

"This is to certify that J. C. Howell has this day deposited in the Merchants and Mechanics Savings Bank of Norfolk, Va., to my credit, the sum of fifteen thousand ($15,000) dollars, as part payment on the property sold to him by me for $185,000, which will more fully appear by reference to an option which he holds bearing date December 29, 1904, which has been continued from time to time. This $15,000 is not subject to my order or draft until the expiration of sixty (60) days from this date, November 27, 1905. At the end of that time, if J. C. Howell has not perfected his arrangements and paid the balance of the cash payment in accordance with said option, then the said option is at an end and the $15,000 is to be taken by me as liquidated damages, and I can, and am to check on said bank for the said $15,000.

"Given under my hand this 27th day of November, 1905.

"CHAS. J. COLONNA."

"I, J. C. Howell, consent and agree to the above.

"Given under my hand this 27th day of November, 1905.

"JAY C. HOWELL."

"November 27, 1905. Received of J. C. Howell, fifteen thousand dollars in accordance with above agreement.

"MERCHANTS AND MECHANICS SAVINGS BANK.

"JNO. E. WALES, *Cashier.*"

In his answer, the defendant, while admitting a number of the averments of the bill, and relating his version of the various transactions had with Howell growing out of the execution by him of the option contract of December 29, 1904, denies the material averments made against him, and strenuously insists that the B. A. Colonna property did enter into the consideration which induced him to execute the contract; that he never at any time agreed that the B. A. Colonna property should not be considered a part of the said option contract, and emphatically denies that he repeatedly renewed his contract, reiterating that this property was no longer a part thereof, thereby inducing the Dry Dock Company "to purchase all the right and title of said Howell" in the property of the respondent. After alleging that, at the time the said option contract was first executed, Howell held an option on the B. A. Colonna property, respondent charges that Howell himself, exercising that option, brought about the sale of the B. A. Colonna property to one W. Harry Brown; and subsequently claiming that it was impossible for him to perform this part of the agreement of December 29, 1904, sought to entrap respondent by casual conversations and otherwise into some admission that the acquisition of the said B. A. Colonna property was no longer considered by him a part of said contract of option."

Upon the hearing of the cause, "upon the bill, answer and exhibits therewith filed, and the depositions of witnesses," the circuit court, being of opinion that the complainant, the Dry Dock Company was not entitled to specific performance of the contract set forth in the bill, so decreed; but further decreed, that "the $15,000 deposited in the Merchants and Mechanics Savings Bank, as set out in the bill, should not be forfeited to C. J. Colonna," and directed the bank to pay said $15,000 to the complainant, the Colonna Dry Dock Company, Incorporated. From that decree this appeal is taken, the appellant assigning as error the refusal of the court to specifically enforce the substituted contract, alleged in its bill of complaint, and

also the refusal of the court to grant a rehearing of the cause that the appellant might be permitted to submit additional evidence; and appellee assigns as cross-error, the denial of his right to the $15,000 decreed to the appellant.

With reference to the refusal of the circuit court to grant appellant a rehearing, we deem it only necessary to remark, that the additional evidence which the appellant proposed to submit for the consideration of the court was merely cumulative, and could not possibly have changed the result, as it would not have had any sort of bearing upon the controlling question in the case, which is presented on the first assignment of error, viz.: Was there or not proved by appellant the alleged substituted contract between the parties which it is claimed a court of equity should enforce?

We have stated the grounds on which appellee refused to perform this alleged contract, and are of opinion that the circuit court did not err in decreeing that the proof was insufficient to justify specific enforcement of it.

The provisions of the original contract between appellee and Howell are plain, and the so-called contract of November 27, 1905, specifically refers to the original contract, and merely grants the additional time of 60 days within which Howell might perfect his arrangements and pay the balance of the cash payment, "in accordance with the said option," but expressly provided that if Howell had not, at the expiration of the 60 days perfected his arrangements and did not pay the balance of the cash payment, "then the said option is at an end," etc.

Neither in the pleadings nor in the evidence does appellant claim it was, itself, in a position to carry out the written contract on its part; nor that Howell, appellant's assignor, was at any time before the assignment ready and desirous to perform the contract on his part; but the sole reliance of appellant is, that appellee verbally at various times agreed to waive some of the conditions or provisions of the written contract, and that the paper executed by appellee November 27, 1905,

was to be so construed, all of which is denied by appellee both in his answer and in his testimony, his denials being positive and relating to every occasion on which appellant claims that these verbal modifications of the written contract were made.

At the time—June 5, 1905—when Howell wrote appellee that his brother (B. A. Colonna) had sold his property, the renewal of the original option to June 20, 1905, had not expired, and to this letter of Howell the appellee made no reply; but shortly afterwards, when Howell came to Norfolk to see him about renewing the option, it was renewed by endorsement on the option in these words: "I hereby extend this option until the first day of October, 1905. Given under my hand and seal this 27th day of June, 1905. Charles J. Colonna." Nothing there appears as to any modification of the conditions or provisions of the option. · There was a discussion between Howell and appellee on that day over a suggestion or request by Howell that a modification of the option, eliminating the B. A. Colonna property, be made, and this occurred at the office of appellee in Berkeley, a suburb of Norfolk, with no one present except appellee, his two sons and Howell; and appellee and his two sons testify that he positively refused to renew the option with the B. A. Colonna property eliminated, and appellee and one of his sons state that Howell replied, "Well, I will see what I can do;" whereupon appellee and Howell left for the office of Mr. Baum, appellee's attorney, in Norfolk, where the renewal of the option was endorsed thereon which is given above. Howell and Baum both testify that at that time appellee verbally agreed to the elimination of the B. A. Colonna property, but appellee positively denies this, and the fact remains that this renewal was made in writing, by endorsement upon the original contract, without mention of any change in its terms or provisions.

The next renewal was in writing endorsed on the original contract October 20, 1905, extending the option till November 20, 1905, and we again have a conflict of testimony as to the

alleged verbal modification between the same three parties, Howell and Baum affirming and appellee denying that the modification was agreed on, the latter being sustained again by the fact that the renewal then and there was in writing endorsed upon the original contract, without mention of any change; and even if the evidence of Howell and Baum, intended to impeach the written renewal of the contract, was admissible, it is by no means conclusive, and is plainly insufficient to prove, with the degree of certainty that the law requires, the alleged modification of the written contract.

The next renewal was on November 20, 1905, and the proof shows only that appellee, after having refused again and again to extend the option at all, did upon the persuasion of Howell verbally agree "to give him another week."

It has already been observed that the last extension, which was in writing and executed on November 27, 1905, does not at all sustain the contention of appellant. As to what occurred at a meeting of the parties in the office of appellee's attorney, or at the office of appellant's attorney, where the paper just spoken of was executed, the testimony of the witnesses examined is conflicting, the appellee denying that any such discussion took place or that there was any agreement to eliminate the B. A. Colonna property, and he is again corroborated by the written evidence of what was there agreed on. The oral evidence throughout is wholly unsatisfactory and not at all conclusive, so far as the appellant is concerned.

The principles of equity, contended for by counsel for appellant as well established, are all sound enough and would control in a case to which they have application, but they do not at all apply to the facts of this case. The original writing expressed correctly the contract really made—nothing was omitted by any mistake of the draughtsman, or by mutual mistake, which violates the manifest intention of the parties to the agreement. This is not the gravamen of appellant's complaint. It is, that appellee refuses to perform on his part a verbal sub-

stituted contract for the original contract, and upon the proof adduced in support of the alleged substituted contract, a decision of the case is clearly controlled by that line of decisions which have settled the law in this State as to when a court of equity will not decree specific performance of a contract. *Ingersoll* v. *Pond, ante* p. 179, 2 Va. App. 130, and cases there cited.

Among the cases cited in the above case, are *Clinchfield Coal Co.* v. *Powers,* 107 Va. 393, 59 S. E. 370; 1 Va. App. 540, and *Blanchard* v. *Railroad Co.,* 31 Mich. 443, 18 Am. Rep. 142. In the first named case, the opinion by Keith, P., after stating that the rules of evidence in suits of this character are firmly established by the decisions of this court, says: "All applications to the court to compel specific performance are addressed to the discretion of the court—a sound judicial discretion regulated by the established principles of the court— and the contract must not only be distinctly proved, but it must be clearly and distinctly ascertained; it must be reasonable, certain, legal, mutual; upon valuable, or at least meritorious, consideration; and the party seeking specific performance must not have been backward, but ready, desirous, prompt and eager."

And in the second named case—*Blanchard* v. *Railroad Co.* —approved in the first, it is said: "Where the court is unable from all the circumstances of the case to say whether the minds of the parties met upon all the essential particulars, or if they did, then cannot say upon what substantial terms they agreed, or trace out any practical line where their minds met, specific performance will be refused." See also *Creecy* v. *Grief, post* p. 320, 61 S. E. 769.

The foregoing clearly stated principles, governing in such cases, apply with peculiar force to the case in judgment, and are conclusive against the contentions of the appellant.

Appellee rests his cross-assignment of error on the ground that the provision in the agreement of November 27, 1905, with respect to the fifteen thousand dollars on deposit in the bank,

should be regarded as a sum agreed on as "liquidated damages," due him, and not as a "penalty" against which appellant is entitled to relief.

In *Ewing* v. *Litchfield,* 91 Va. 575, 22 S. E. 362, the opinion clearly demonstrates that courts of equity have not and could not undertake to give damages, save ancillary or auxiliary to some one of the recognized subjects of jurisdiction, and then only such damages are awarded as may be necessary to do full justice by way of compensation; and in that case it was said that where there is doubt whether the provisions of a contract constitute a forfeiture or a penalty, or liquidated damages, courts of equity strongly incline to that construction which declares it to be a forfeiture or a penalty, rather than liquidated damages.—"For if it be construed as a forfeiture or a penalty, it will entertain jurisdiction to prohibit either the enforcement or the voluntary payment of the penalty or forfeiture, and will compel the performance of the alternative contract if a proper case be made; but if it be construed as liquidated damages, the jurisdiction of the court of equity is at an end."

Appellee does not question the jurisdiction of the court in this case, and is resisting the prayer of the bill for specific performance, yet claims the fifteen thousand dollars as "liquidated damages" due him for the breach on the part of appellant and its assignor of the several stipulations contained in the original contract of option, or else for the breach of the covenant to pay the "balance of the cash payment in accordance with said option." To sustain appellee's contention, counsel insists that applying the five tests for distinguishing between "liquidated damages" and "a penalty," recognized in the case of *Bagley* v. *Peddie,* 5 Sandf. 192, 16 N. Y. 469, 69 Am. Dec. 713, as laid down by Sedgwick in his work on the "Measure of Damages" (7th ed.), vol. 2, pp. 243-248, and in 1 Pom. Eq. Jur. (3rd ed.), secs. 441-445, as fairly deducible from and sustained by the preponderance of judicial decisions,

the provision of the contract of November 27, 1905, under consideration, must be construed as "liquidated damages" and not a "penalty" or a "forfeiture."

Of the•five tests or rules invoked, the first and third, it is conceded, do not apply to this case, and the remaining three are as follows:

"(2) On the contrary, where the language used is clear and explicit to that effect, the amount is to be deemed liquidated damages, however extravagant it may appear, unless the instrument be qualified by some of the circumstances hereinafter mentioned."

"(4) When the covenant is for the performance of a single act or several acts, or for the abstaining from doing some particular act or acts which are not measureable by any exact pecuniary standard, and it is agreed that the party covenanting shall pay a stipulated sum as damages for a violation of any of such covenants, that sum is to be deemed liquidated damages and not a penalty."

"(5) Where the agreement secures the performance or the omission of various acts of the kind mentioned in the last proposition, together with one or more acts in respect of which the damages on a breach of the covenant are certain or readily ascertainable by a jury, and there is a sum stipulated as damages to be paid by each party to the other for a breach of any one of the covenants, such sum is held to be a penalty merely."

It is argued that the construction of the contract of November 27, 1905, is controlled by rules 2 and 4, *supra*, and not by rule 5, for the reason that the covenant for the failure of which these "liquidated damages" are provided, consists of a single act, which is not measurable by any exact pecuniary standard. But the fallacy of this argument is apparent when it is observed that the contract is for an extension of the time within which Howell might complete his arrangements to carry out the *provisions* of the original contract and pay the balance of the cash payment stipulated for therein. By the terms of the original

contract, Howell was to form a company which should unite appellee's property and the property of B. A. Colonna in its holdings, and was to pay appellee the consideration therein named, partly in cash, partly in the stock of the company issued upon the basis of the company's combined holdings, including the B. A. Colonna property, the maximum issue of stock to be a certain amount, divided into preferred and common stock, as agreed, and the balance of the purchase money secured by bond of the company and a first deed of trust on the property of appellee conveyed to the company.

The three things that Howell was to do were separate and distinct, and, therefore, could not be considered as interdependent. One of the agreements made by Howell, and which he did not perform, was to acquire title to the B. A. Colonna property and unite it with that of appellee in the holdings of the company to be formed. Now appellee asserts, and we concede, that damages for the breach of this stipulation are not measureable by any exact standard, and if it stood alone might with propriety be the subject of stipulated damages; and the same may be true with respect to the agreement as to the amount of stock to be issued; but the contract also binds Howell to the payment, within a given time, of a stated sum of money, and the $15,000 now claimed by appellee are the damages stipulated for a failure to comply with any or all of these provisions, and damages for the breach of the agreement to pay money, capable of exact measurement in contemplation of law.

As was said by this court in *Bethel* v. *Salem Imp. Co.,* 93 Va. 354, 25 S. E. 304, 57 Am. St. Rep. 808, 33 L. R. A. 602, the "measure of damages for a failure to pay money is, with few exceptions, the principal sum with legal interest thereon from the time the payment was due." In this case none of the exceptions to the rule appear.

We have then independent agreements, for a breach of some of which there is no exact measure of damages, united with an

agreement as to which there is an exact standard for measuring damages for its breach, and the case is thus brought strictly within the 5th rule of construction, as presented in appellee's brief.

The case of *Spear* v. *Smith,* 1 Denio 465, is cited in a note to Pom. Eq. Jur., *supra,* with this comment: "There was an agreement to comply with the decision of arbitrators to whom a controversy had been submitted, or else to pay one hundred dollars, and the latter sum was held to be a penalty, because the award might be for the payment of a sum of money, as in fact it was. It is partly for this reason that where a contract contains several stipulations, some for the payment of money, and others for the doing or not doing specific acts, an additional provision binding a party to pay a fixed sum in case of his default in any of those matters is necessarily a penalty." Citing *Whitfield* v. *Levy,* 35 N. J. Law 149; *Shiell* v. *McNitt,* 9 Paige 101, 106; *Niver* v. *Rossman,* 18 Barb. 50.

A further contention is made in this case, that even if the contract of November 27, 1905, has to be considered as coming under the control of rule 5, *supra,* thereby defeating the claim of appellee to the $15,000 on deposit in the bank, we should go outside of the contract to "ascertain the circumstances generally surrounding the transaction;" and that, when this is done, it will be found that in order to induce appellee to extend the option (for 60 days) "some definite consideration other than a nominal consideration was necessary in order to assure him from any loss by reason of the delay, or to relieve his anxieties upon the subject, and that to meet this phase, the provision in the contract with respect to the $15,000 was inserted, and was, though not so denominated in words, the real consideration for the renewal of the option."

To this view we cannot assent, for the obvious reason, that under the rules of construction to which we have adverted this agreed compensation to appellee would have to be regarded as a penalty, or else purely speculative or so unreasonable, under

all the facts and circumstances of the case, that a court of equity would neither enforce it or permit it to be enforced.

Upon the whole case we are of opinion that the decree appealed from is without error and is, therefore, affirmed.

*Affirmed.*