## CIRCUIT COURT OF THE CITY OF RICHMOND

Hanover Radio, Inc.

v.

Ninety-Two Point Seven
Broadcasting, Inc., et al.

### August 17, 1982

By JUDGE WILLARD I. WALKER

This matter is before the court on plaintiff's action for breach of contract, seeking the remedy of specific performance. Based on findings outlined below, I conclude that the settlement agreement between the parties constitutes an enforceable contract and that plaintiff is entitled to specific performance thereof.

The facts are as follows: Hanover Radio, Inc. (Hanover) and Ninety-Two Point Seven Broadcasting, Inc. (92.7) have been involved in proceedings before the Federal Communications Commission (FCC) that will determine who will be awarded the broadcasting license for Mechanicsville, Virginia. In the course of these proceedings the respective presidents of Hanover and 92.7 signed a settlement agreement (Agreement), for the stated purpose of resolving "the conflict between their mutually exclusive applications." Under the

Agreement 92.7 agreed to withdraw its application in return for reimbursement of its expenses by Hanover (not to exceed $73,000).

On February 4, 1982, the parties filed a joint request for approval of agreement pursuant to Section 73.3525 of the FCC rules. The joint request summarized the agreement as follows:

> The agreement contemplates that the application of 92.7 be dismissed, that the application of Hanover be granted, and that Hanover will reimburse 92.7 for its legitimate and prudent expenses in the preparation, filing and prosecution of its application, subject to prior FCC approval. Reimbursement will be made in the amount stated in the agreement, or in an amount approved by the Commission, whichever is lower.

The Broadcast Bureau responded to the joint request on March 10, 1982, recommending that the FCC grant the license to Hanover with reimbursement to 92.7 in the amount of $57,716.90. On March 26, 92.7 filed a reply to the Broadcast Bureau's recommendations providing further documentation to substantiate additional expenses. Five days later, on March 31, 1982, 92.7, by its newly retained attorneys, filed a motion with the FCC to withdraw the settlement proposal and resume hearings. Subsequently, 92.7 has resumed active pursuit of the FCC license for Mechanicsville. Plaintiff alleges that defendant's refusal to proceed according to the terms of the Agreement constitutes a breach of contract.

Trial of this action on July 20, 1982, produced three primary issues for resolution by this court. First, does this court have subject matter jurisdiction? Second, was the signature of 92.7's president sufficient to bind the corporation despite lack of formal authorization? Third, are the circumstances appropriate for an award of specific performance?

In its motion to dismiss for lack of subject matter jurisdiction, 92.7 identifies the essential question as whether the state court's determination would impair or conflict with federal regulation of the field of communications. Although the Federal Communications Act gives the FCC exclusive jurisdiction over radio broadcasting, the Supreme Court has refused to read this act as giving the FCC authority "to determine the validity of contracts between licensees and others." Regents of the University System of Georgia v. W.E. Carroll, 338 U.S. 586, 602 (1950).

The FCC itself consistently maintains the position that it has no jurisdiction over the private contract rights and obligations of parties, even though the subject matter of such contracts concerns broadcasting facilities. In re Application of Transcontinent Television Corp. (WROC-TV), 21 Rad. Reg. (P & F) 945 (1961), Gerald J. Block, 36 Rad. Reg. (P & F) 924 (1976). In its ruling in a dispute about the proper interpretation of an agreement regarding radio station facilities, the FCC noted that this was the "sort of dispute which cannot be resolved by the Commission and is best left to the local courts." In re John F. Runner, Receiver (KBIF), 36 Rad. Reg. 2d (P & F) 773, 778 (1976). By the same token, local courts have maintained their jurisdiction over private contractual matters. As the Supreme Court of Utah noted, "the fact that the agreement concerns a radio station does not divest the court of jurisdiction." Themy v. Seagull Enterprises, Inc., 595 P.2d 526 (Utah 1979).

Under the facts of this case the court is being asked merely to determine the respective rights of the parties under a private agreement. Enforcement of the Agreement between Hanover and 92.7 will not impair or conflict with the FCC's exclusive jurisdiction over radio broadcasting, especially since the Agreement remains subject to FCC approval. By the FCC's own interpretation, settlement agreements among mutually exclusive applicants are "private contractual arrangements." In re Anax Broadcasting, Inc., 88 F.C.C. 2d 607, 611, 50 Rad. Reg. (P & F) 798, 801 (1981). I conclude that this court is the appropriate jurisdic-

tion for a determination of the rights of the parties under the Agreement.

Was the signature of Marilyn Edwards, President of 92.7, without formal authorization or execution, sufficient to bind the corporation to the Agreement? A close examination of the structure and operation of the defendant corporation is essential to resolve this issue. The record before the court reveals that Marilyn Edwards transacted business on behalf of 92.7 since its formation and that her signature alone as President has been accepted routinely as authorized by 92.7. In addition to being President of 92.7, Ms. Edwards is the majority stockholder, holding 86% of the corporate shares. The outstanding 14% is held by two other stockholders, Conway Downing, Sr. and John Crawford, who own 9% and 5%, respectively. Ninety-Two Point Seven's stockholders consistently deferred to Ms. Edwards's judgment in handling all matters affecting 92.7.

The law of Virginia regarding a corporate officer's authority to bind the corporation has emerged through a series of Virginia Supreme Court cases. In Sterling v. Trust Co. of Norfolk, 149 Va. 867 (1927), the court said:

> When in the usual course of the business of a corporation an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact business. When the agent acts in the usual course of the corporation business with apparent authority, the corporation will not be permitted to escape liability by a plea of want of authority of its agents.

That a corporation should act through its board of directors is clear, however, "when with the knowledge and acquiescence of all of its stockholders it declines so to do, it must accept the consequences." Moore v. Aetna Co., 155 Va. 556, 570 (1930). Dr.

Downing's acquiescence to the Agreement is evidenced by a letter from his son, an attorney, to the attorneys representing 92.7 before the FCC. Although there is conflicting testimony regarding the extent of John Crawford's knowledge of the Agreement prior to its signing, Mr. Crawford's actions in providing expense information, needed to support the joint request for approval of the Agreement by the FCC, is indicative of his acquiescence. The record is clear that Marilyn Edwards communicated informally by telephone with John Crawford, her father-in-law, on matters concerning 92.7. Following the signing of the Agreement on February 4, 1982, 92.7 proceeded pursuant to its terms with the acquiescence in this action by the stockholders of 92.7.

The Supreme Court in <u>Brewer</u> v. <u>First National Bank</u> stated the rule applicable to close corporations:

> [I]t is generally recognized that where there is a family, or close corporation, such as the one involved in this case, in which the stockholders, officers and directors ignore the requirements of the statutes and corporate by-laws, and conduct its business in an informal manner, the actions so taken may, nonetheless, be binding upon the corporation. 202 Va. 807, 812-813 (1961).

The agreement in <u>Brewer</u> was found binding despite the fact that it was neither authorized at a formal meeting of the board nor executed in the proper manner. It was clear to the court "from the actions of the parties, from the circumstances surrounding and subsequent to the execution of the agreement, and from the agreement itself, that it was intended, by all concerned, to be the act of the corporation." Id. at 813.

Ninety-Two Point Seven is a close corporation that admittedly conducts its business in an informal manner. The actions of the parties and the circumstances subsequent to the execution of the Agreement by Marilyn Edwards similarly support the conclusion that it was intended to be the "act of the corpora-

tion." The other stockholders were informed of the Agreement subsequent to its signing and 92.7 acted pursuant to its terms for almost two months in proceedings before the FCC. The knowledge and acquiescence of Downing and Crawford in the Agreement constitutes de facto authorization sufficient to bind the corporation and its stockholders.

Defendants argue that the contract is not valid because the corporation did not follow the procedures required by § 13.1-77 of the Code of Virginia for disposition of corporate assets. In view of the fact that 92.7 admittedly has no assets, I find this code section inapplicable.

Are the circumstances appropriate for an award of specific performance? Specific performance is not a matter of right, but an extraordinary remedy available within the sound discretion of the court. 17 M. J., Specific Performance, § 2 (1979). Before using its discretion to award specific performance, the court must be convinced that plaintiff's remedy at law is inadequate and that the contract terms are certain enough and enforceable by the court without tremendous difficulty. Thompson v. Commonwealth, 197 Va. 208 (1951).

Plaintiff argues that the two primary elements of inadequacy of a legal remedy are present here: the contract concerns a license to operate a radio station which is unique and the damages for breach are too speculative to be ascertained. The Agreement itself acknowledged that the license applications by Hanover and 92.7 were mutually exclusive, since the FCC would be granting only one license for the Mechanicsville, Virginia, area. Defendant's breach of the contract threatens plaintiff with the possibility of loosing the license to operate the only station in Mechanicsville, whereas performance of the contract virtually assured Hanover of securing the license, since it would be the sole remaining applicant. Since there has been no radio station in operation in Mechanicsville, there is no basis to even estimate the value of the license in terms of anticipated earnings over the

course cf the station's operation. The damages flowing from plaintiff's loss are totally speculative and conjectural.

Cases from other jurisdictions that have ruled on contracts involving broadcasting facilities under facts similar to those presented here support plaintiff's claim that specific performance is indeed appropriate. Commercial Radio Institute v. Western Pennsylvania Christian Broadcasting Co., 428 F. Supp. 1054 (W.D. Pa. 1979), Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co., Inc., 414 F.2d 750 (1969), Stanley T. Deck v. Guy S. Erway, No. 124494, Memorandum of Decision, Superior Court of the State of California for the County of Santa Barbara (1980).

The Supreme Court of Virginia has identified the prerequisite circumstances for an award of specific performance in this state:

> The contract must not only be distinctly proved, but it must be clearly and distinctly ascertained; it must be reasonable, certain, legal, mutual; upon valuable, or at least a meritorious, consideration; and the party seeking specific performance must not have been backward, but ready, desirous, prompt and eager. Colonna Dry Dock Co. v. Colonna, 108 Va. 230, 239 (1908).

The record before this court substantiates the presence of these elements. The signed Agreement between the parties has been proven and its terms are clear, certain and reasonable. Plaintiff has duly performed its obligation under the Agreement and is and has been ready, willing and able to pay the defendants the consideration due under the Agreement's terms.

In addition to being entitled to specific performance of the Agreement on the terms contained therein, plaintiff is entitled to its costs.