# Richmond

## W. F. Magann Corporation, Et Al. v. Virginia-Carolina Electrical Works, Incorporated.

January 15, 1962.

Record No. 5355.

Present, All the Justices.

*John A. MacKenzie (Harvey E. White, Jr.; MacKenzie & Babb; White, Ryan & Reynolds,* on brief), for the plaintiffs in error.

*William C. Coupland (W. L. Berkley, III; Jett, Sykes & Coupland,* on brief), for the defendant in error.

Buchanan, J., delivered the opinion of the court.

The question to be resolved in this case is whether a subcontractor is liable under its indemnity contract to its general contractor for damage done to the work by the act or neglect of a third party.

W. F. Magann Corporation, the general contractor, now one of the appellants, entered into a contract with Hampton Roads Sanitation District Commission to furnish the materials and perform the labor for constructing a combined sewage pumping station and office building at the corner of Plume and Atlantic streets, in Norfolk. Magann and Royal Indemnity Company, its surety, the other appellant, executed and delivered to the Commission an owner's protective bond, as required by § 11-23 of the 1950 Code.

Virginia-Carolina Electrical Works, Incorporated, the appellee, entered into a contract with Magann in which it agreed, for a consideration of $31,734.69, to furnish, install, test and guarantee all electric power and light conduit, lighting fixtures, underfloor wiring system, wiring, switchgear, controls and accessories for the job, being Item 13 of the general contract, which also provided: "This Contractor shall install duct and wiring from the existing manhole of the Virginia Electric and Power Company into the building as shown on the drawings."

Virginia-Carolina in its subcontract with Magann agreed to indemnify Magann and save it harmless from, among other things, "any and all loss, damage or expense which it may sustain or to which it may be put, by reason of any injury or damage to its property or that of any other person arising out of the performance of this work, or by or on account of any act, omission, or negligence of the sub-contractor, its agents, employees, sub-contractors, vendors, materialmen, or any other person having anything whatsoever to do in connection with the work of the sub-contractor."

After the completion of the work Virginia-Carolina brought this action to recover from Magann and its surety the unpaid balance of the subcontract price, alleged to be $8,364.39.

Magann and its surety filed a special plea setting forth Virginia-Carolina's indemnity agreement and alleging that during the construction flood waters entered the building through conduits installed by Virginia-Carolina and not properly sealed and protected by it, as a result of which certain electric motors, pumps and equipment were badly damaged. The plea further alleged that Virginia-Carolina accepted responsibility for the damage and authorized Magann to have the damage repaired, which it had done at the cost of $5,808.96. It further alleged that for the delay occasioned by the damage a penalty had been assessed against Magann, of which Virginia-Carolina's pro rata share was $497.37. Magann had, it alleged,

deducted the sum of these two items from the balance due Virginia-Carolina on its subcontract and sent Virginia-Carolina a check for $1,723.93 for the balance due it, which Virginia-Carolina still had in its possession.

Magann also filed a counterclaim against Virginia-Carolina asking judgment for $6,306.33, the sum of the two items of repairs and delay, on the ground that they resulted from Virginia-Carolina's negligence. However, the court struck out Magann's evidence on the question of negligence, no error was assigned to that ruling and it need not be further noticed.

The court, without a jury, heard the evidence offered by the parties on the question of liability under the indemnity provision of the contract and held that the indemnity did not cover the damages complained of and that Virginia-Carolina was not chargeable with a pro rata share of the penalty for delay. It entered judgment in favor of Virginia-Carolina against Magann for the $8,364.39 and the case is here on Magann's assignment of error to that ruling.

There is no substantial conflict in the relevant evidence. Virginia-Carolina's work, under its subcontract, included the installation of four steel pipes, called nipples or sleeves, four inches in diameter and about 26 inches long, extending through the Plume street wall of the building at about 3½ feet below the street surface, and so that about 1½ inches of the nipple extended out beyond each side of the wall. As described in Virginia-Carolina's brief:

"* * * The nipples on the outside were to be connected by means of conduits extending from the outside openings into a manhole which was to be installed in the sidewalk area by the Virginia Electric and Power Company. The openings on the inside were to be extended by conduits to a switch gear box when and as the gear box and the manhole were installed, and then electric cables were to be drawn through these conduits and nipples from the manhole to the switch box."

Virginia-Carolina completed the job of installing these nipples around two months prior to the flooding, which occurred October 5, 1957. It did not make the extension through the nipples into the manhole because, as its manager of the project testified, they had to wait until Virginia Electric and Power Company (VEPCO) constructed the manhole. There was evidence that it plugged the outside end of the nipples with oakum and boards and then left the job to await the construction of the manhole.

The plans for the building called for the manhole to be constructed adjacent to the nipples. However, when VEPCO's engineer discovered that the entrance to the building was just above the nipples, "to prevent the opening of the manhole being right in the front door, * * * we moved the manhole approximately seven feet west and extended the duct to pick up the nipple."

The work of constructing the manhole was done by a contractor chosen by VEPCO. Its superintendent testified that they dug the hole about 9½ feet deep and poured concrete walls in it with lateral dimensions of about five and six feet. Through the manhole they extended fiber ducts and connected them with the four nipples in the wall, the location of which was shown to them by Virginia-Carolina's foreman. The contractor's superintendent testified that these nipples were then completely open at both ends. When the work was finished the manhole was left uncovered, with a barricade around it, and the opening in the manhole from which the ducts were extended to connect with the nipples was left unplugged. It required about ten days to do this work and about two weeks later the floods came. Water poured into the manhole and ran unobstructed through the open ducts and nipples into the building, covering pumps and motors and doing the damage complained of.

VEPCO's engineer was asked whether he knew that wherever the manhole might be installed it was Virginia-Carolina's obligation to connect with it. He replied that such was against the general policy of VEPCO, which always gave the point of service as near as possible to the property line.

Dorey, Virginia-Carolina's manager of this project, testified: "According to the specifications, it was our requirement to run a group of fiber ducts from the Virginia Electrical [sic] Power Company manhole into or to the building where we picked them up on the outside with steel conduits, and from then into the switch gear." He said he knew that was his company's work and they intended to do it, and the water which entered the building had gone through extensions which were a part of his company's contract. When the flooding occurred he did not know, he said, that his company had not tied in to the manhole; that they were not expecting VEPCO to tie in and they were not informed of it by VEPCO or by Magann, and he doubted that Magann knew that the duct line had been put in. But he knew, he said, that VEPCO was going to build the manhole.

Under the terms of Virginia-Carolina's indemnity contract it was

Virginia-Carolina's business to know about what VEPCO had done if it was to avoid liability for damage resulting from that source. There was plenty of time for it to have found out about it before the damage occurred. By its contract it agreed to protect Magann from all loss or expense on account of any act, omission or negligence of itself, its agents, employees, subcontractors, vendors, materialmen, or "any other person having any thing whatsoever to do in connection with the work" of Virginia-Carolina.

The evidence clearly shows, and it was expressly conceded at the trial, that under Virginia-Carolina's contract it had the responsibility of making the conduit extension to the manhole when it was built by VEPCO. It did not contend below and does not contend in its brief here that the change in location of the manhole changed or affected its obligation to make the extension. It is obvious that if the manhole had been placed exactly where it was first expected to be, and left in the same condition as the one constructed, the same result would have occurred. Water would have flowed from it into the building as readily from one location as from the other.

The contention of Virginia-Carolina, as stated in its brief, is that under a proper construction of its contract its indemnity obligation was limited to work performed by it or by "any other person standing in the same relation to the subcontractor as an agent, employee, subcontractor, vendor or materialman." It relies on the *ejusdem generis* rule to support its contention. But, as this court said in *Washington & O. D. Ry.* v. *Westinghouse Co.*, 120 Va. 620, 626, 89 S. E. 131, 133:

"* * * The *ejusdem generis* rule is invoked only for the purpose of ascertaining the intent and meaning of the language under consideration, and should not be applied so as to do violence to the language employed in the instrument under consideration."

By the plain words of its contract Virginia-Carolina made itself responsible for all loss, damage or expense occasioned by any act of persons described, or of any other person having "anything whatsoever to do in connection with the work" of Virginia-Carolina. Very clearly VEPCO had something to do in connection with the work of Virginia-Carolina. Admittedly it had to build a manhole, which had a direct and positive connection with Virginia-Carolina's work, and admittedly also it was Virginia-Carolina's job to supply and connect the ducts from the manhole to the nipples, and in making that connection itself VEPCO was doing work which was not only connected

with the work of Virginia-Carolina, but which was a necessary part of the very work that Virginia-Carolina was responsible for doing. Its connection with the work of Virginia-Carolina was closer than would have been the connection of a materialman who delivered material to the job and for whose act by express designation Virginia-Carolina contracted to be responsible. Magann introduced evidence to the effect that Virginia-Carolina's manager so understood his company's obligation under the contract and accepted responsibility for the damage at the time it was done; but the evidence is not conclusive to that effect and we deal here only with the contract as written.

It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares. 4 Mich. Jur., Contracts, § 40, p. 375, § 45, p. 383; 42 C.J.S., Indemnity, § 8, p. 574; 27 Am. Jur., Indemnity, § 13, p. 463.

Our conclusion is that Virginia-Carolina's indemnity contract covered the damage caused by the act of VEPCO, and that Magann should have received credit for the amount paid by it for repairing the pumps and motors damaged by the flood waters, shown by the evidence to have been $5,808.96. The trial court held that Magann was not entitled to charge Virginia-Carolina with $497.37 as a pro rata part of the penalty for delay assessed against Magann, and Magann has not established error in that holding, nor in the holding that Magann was not entitled to recover counsel fees and costs. Magann made no claim for the latter items in its pleadings and the record discloses no proper grounds for allowing them.

For the reasons stated we reverse and set aside the order of the trial court insofar as it grants judgment to Virginia-Carolina in the sum of $8,364.39, and judgment will be entered here in favor of Virginia-Carolina Electrical Works, Incorporated, against W. F. Magann Corporation and Royal Indemnity Company in the sum of $2,555.43 ($8,364.39 less $5,808.96) with interest from October 24, 1960.

*Modified and final judgment.*