# CHRISTOPHER ASSOCIATES, L.P.

v.

# J. C. SESSOMS, JR., ET AL.

Record No. 920645

January 8, 1993

Present: Carrico, C.J., Compton, Whiting, Lacy, Hassell and Keenan, JJ.,
and Poff, Senior Justice

*James C. Howell (Willcox & Savage*, on briefs), for appellant.
*Paul M. Lipkin (Mary G. Commander; Goldblatt, Lipkin & Cohen*, on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this appeal, we must construe a liquidated damages clause in a real estate sales contract.

The facts are undisputed. On October 18, 1988, appellees J. C. Sessoms, Jr., and Patricia T. Sessoms, as Seller, executed a contract with appellant Christopher Associates, L.P., a Virginia limited partnership, as Buyer, for the conveyance of approximately 132 acres of realty located in the City of Suffolk.

The agreement contained the following provisions that are pertinent to this controversy; we are particularly concerned with paragraph 6.

### "*W I T N E S S E T H:*

"That for and in consideration of the sum of Ten Thousand Dollars ($10,000), by cash in hand paid by Buyer to Escrow Agent and to be applied to the purchase price hereinafter set forth, Buyer agrees to purchase from Seller and Seller agrees to sell to Buyer the hereinafter described real property on the terms and conditions as hereinafter set forth:

. . . .

''2. The purchase price of the Property shall be Nine Thousand Seven Hundred Fifty Dollars ($9,750) per surveyed acre . . . . Said purchase price shall be paid as hereinafter set forth.

''3. All parties acknowledge and agree that Buyer intends to develop the Property in accordance with Buyer's plan for residential development. It is further understood and agreed that such development will require certain zoning changes and will require that Buyer be able to determine the feasibility of its proposed project. In order to accommodate Buyer's needs, the parties agree to the following scheduling of activity and payment:

. . . .

''B. If, at the end of said feasibility period or prior thereto, Buyer should determine that the project is not feasible, Buyer may so notify Seller not later than 10 days after the expiration of the feasibility period and, upon such notice, Buyer shall be entitled to a full refund of the deposit tendered herewith and this agreement shall be terminated and no party shall have any further claim against any other party hereunder;

''C. Buyer shall commence, no later than January 15, 1989, necessary action for a determination of the necessary rezoning of the Property . . . . Buyer shall have the option to notify the Seller that rezoning cannot be obtained and to terminate this agreement. Upon notification that the desired rezoning cannot be obtained, the Ten Thousand Dollars ($10,000) earnest money deposit shall be returned to the Buyer. . . .

''D. If this agreement is not terminated pursuant to subparagraph 3B or 3C above, Buyer shall, upon notification of rezoning acceptable to the Buyer, . . . pay to Seller the additional sum of Forty Thousand Dollars ($40,000) to apply to the purchase price. The earnest money deposit of Ten Thousand Dollars ($10,000) shall become nonrefundable upon notification of rezoning acceptable to the Buyer. The additional deposit of Forty Thousand Dollars ($40,000) shall be nonrefundable when made. . . .

. . . .

"6. If, on or before the date of closing, Buyer shall default in the payment of the purchase price or shall otherwise default in the performance of any of the other terms of this Contract, Seller shall retain the Deposit as liquidated damages, as its sole and exclusive remedy against Buyer.

. . . .

"10. The deposit of Ten Thousand Dollars ($10,000) paid with this agreement shall be held in escrow . . . until returned to [Buyer] in accordance with the terms of this Contract or paid to Seller pursuant to Paragraph 3D hereof."

The Buyer deposited with the escrow agent the sum of $10,000 when the contract was executed. Following application for and receipt of the necessary zoning change, the Buyer decided not to complete the purchase of the subject property. Thus, the Buyer did not pay the Seller the additional $40,000 or proceed to close the contract. The failure to close did not result from any default by the Seller.

In September 1989, the Seller filed the present action against the Buyer seeking recovery of $40,000 for breach of contract. The Seller alleged that when the rezoning was approved the Buyer was obligated, under the contract terms, to pay $40,000, and that the Buyer refused to pay the sum.

After considering a stipulation of facts, the contract, and the argument of counsel during a bench trial, the court below found for the Seller. Focusing on paragraph 6, as well as paragraph 3D, the trial court concluded "that the intent of the parties was that the $40,000 was to be paid as an additional deposit," that the sum "should have been paid" under paragraph 3D upon notification of the rezoning, and that the sum "should be retained as liquidated damages." The Buyer appeals from the February 1992 judgment order in favor of the Seller for $40,000 plus interest.

On appeal, the Seller contends that the trial court correctly construed the contract. The Seller asserts "that the contract provided for an initial payment of $10,000.00 which is described as the 'earnest money deposit.' Thereafter, the $40,000.00 which was required to be paid is described as 'the additional deposit.' " Continuing, the

Seller argues that the "forfeiture clause," paragraph 6, refers to these "combined sums" as "the Deposit." The Seller says, "It is significant that the 'D' in 'Deposit' is capitalized, and that there is no limitation regarding the sums which are included in this. The clear meaning is that this 'Deposit' consists of the $10,000.00 plus the $40,000.00." We disagree.

 The parties agree that the terms of the contract are clear and unambiguous. Under these circumstances, we construe the contract as written. The court must decide what the parties agreed to, as evidenced by their contract. "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Magann Corp.* v. *Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962). And, this Court is not bound on review by the trial court's construction of an unambiguous contract because we have the same opportunity as the trial court to consider the words within the four corners of the instrument in question. *Wilson* v. *Holyfield*, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984).

 In the present case, the plain meaning of the relevant contract terms is that, upon the Buyer's breach of contract by failure to pay the $40,000 after notification of the rezoning, the sole and exclusive remedy of the Seller against the Buyer was to retain the $10,000, the deposit in escrow at that time. In other words, under the contract, payment of the $40,000 had to be "made" before it became "nonrefundable." Payment of that sum was never made; hence it never attained the status of being nonrefundable.

The first sentence of paragraph 3D requires payment of the $40,000 and recognizes that it is part of the purchase price. Paragraph 6 specifically provides that if the Buyer defaults in the payment of the purchase price, or any of the other terms of the contract, the Seller is entitled to retain as liquidated damages only "the Deposit." We attach no significance to the capitalization of the "D" in "Deposit" in paragraph 6. That term is nowhere defined in the agreement and is not capitalized when used elsewhere in the contract.

Moreover, the second sentence of paragraph 3D provides that the earnest money deposit of $10,000, paid upon execution of the agreement, shall become nonrefundable upon notification of the rezoning. However, the third sentence of that paragraph provides that the additional deposit of $40,000 only becomes nonrefundable when

"made." As the Buyer argues, the very paragraph which requires the payment recognizes that the $40,000 payment is an affirmative covenant and obligation ("Buyer shall . . . pay to Seller"), and that the status of nonrefundability does not attach until those funds are actually paid.

Finally, the liquidated damages clause speaks about retention of the deposit. Language employed by the parties to a contract is normally given its usual, ordinary, and popular meaning. *Winn* v. *Aleda Constr. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 194-95 (1984). The usual, ordinary, and popular meaning of the verb "retain" in the context of paragraph 6 is "to hold or continue to hold in possession or use." Webster's Third New International Dictionary 1938 (1981). *Accord* Black's Law Dictionary 1316 (6th ed. 1990). A party cannot "hold" or "continue to hold" or "use" an item unless that party already has possession of it. Here, at the time of the Buyer's breach, the Seller (actually the escrow agent) only possessed the earnest money deposit of $10,000. Thus, as we have said, the retention of that sum was the Seller's sole remedy under the contract. The Seller did not have possession of the $40,000, so it is illogical to say that paragraph 6 means that the Seller may "retain" that sum as liquidated damages.

Consequently, we hold that the trial court erred in its construction of the contract. We will reverse the judgment below and will enter final judgment here in favor of the Buyer, thus dismissing the Seller's action.

*Reversed and final judgment.*