ROBERT W. BROOKS, ET AL.

V.

RODNEY A. BANKSON, ET AL.

Record No. 930980

June 10, 1994

Present: Carrico, C.J., Compton, Whiting, Lacy, Hassell, and Keenan, JJ.,
and Poff, Senior Justice

*Peter J. Judah (Michael E. Wood,* on briefs), for appellants.
*R. Creigh Deeds (Singleton. & Deeds,* on brief), for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

In this case involving an action by the sellers of real estate against the buyers for breach of contract, we hold that the trial court erred in its interpretation of a contract provision relating to the condition of the property.

In a contract of purchase (the contract) dated February 20, 1992, Rodney A. Bankson and Patricia N. Bankson (the Buyers) agreed to purchase a 30-acre parcel of land located in Bath County from Robert W. Brooks and Patricia M. Brooks (the Sellers). The property to be sold included an older house, constructed about 1895, which the Sellers had restored in the early 1980s. The contract provided for conveyance and transfer of possession on June 12, 1992.

The contract was drawn on a standard form prepared by the Sellers' broker, incorporating blank spaces where specific contract terms could be typed. In Paragraph 2 of the contract, the blank lines were completed with the purchase price of $245,000, which was to be paid "$5,000.00 with contract: remaining cash at closing." Thereafter, in the blank spaces available in Paragraphs 2

and 4 of the contract, the language set forth below was added. Asterisks preceded the typed-in language in Paragraphs 2 and 4, evidently in order to indicate connection of the separated blocks of text into a single provision.

> \* In the event of the below described owner financing, the purchasers will be required to put a minimum of 10% ($24,500.00) down. by [sic] executing this contract the purchasers agree to pay an additional $19,500.00.

> \* cash on the 6/12/92 closing date. This sum, plus the $5,000.00 deposit will be forfeited in the event of buyer default with the total of $24,500.00 being paid directly to the sellers.

An additional typed-in provision granted the Buyers the option to obtain a seller-financed mortgage with a 10% down payment.

Paragraph 8, consisting entirely of preprinted language, was entitled "Risk of Loss/Inspection/Walk Through," and provided in material part:

> All risk of loss or damage to the Property by fire, windstorm, casualty or other cases [sic] is assumed by the Seller until settlement . . . . The Purchaser, by acknowledging this Contract, represents that a satisfactory inspection has been made of the Property and the Purchaser agrees to accept the Property in its present condition except as may be otherwise provided. The Purchaser further has the right to do a "walk through" inspection of the subject Property prior to settlement to inspect the condition of the premises.

Paragraph 11, also entirely preprinted, was entitled "Default" and provided in material part:

> The defaulting party is also responsible for any damages and all expenses incurred by the non-defaulting party in connection with this transaction and the enforcement of this Contract including without limitation, attorney's fees and costs, if any.

An addendum to the contract stated that the Sellers would also provide the Buyers a deed of water rights to a spring intended to

serve the residence. The parties further attached a sketch depicting the tentative boundaries between the parcel to be conveyed and the Sellers' retained land.

On June 10, 1992, two days before the scheduled closing date, Rodney Bankson (the Buyer) and an electrical contractor, Robert Foxwell, visited the property and conducted the "walk through" inspection referred to in Paragraph 8 of the contract. Thereafter, by correspondence between their respective attorneys, the Buyers notified the Sellers that they would not honor the contract for purchase of the property.

The Sellers brought a motion for judgment against the Buyers, alleging breach of contract. The Sellers demanded judgment in the amount of $50,000, consisting of the sum of $24,500 specified in Paragraph 2 of the contract, and additional "damage[s] and all expenses incurred" pursuant to Paragraph 11. In their answer to the motion for judgment, the Buyers denied that they were in breach of the contract or that they were obligated to pay the amounts sought. The Buyers did not plead any affirmative defenses.

In answers to interrogatories, the Buyers contended that the Sellers had made numerous false representations and had failed to disclose material facts regarding the premises. The Buyers stated that these misrepresentations and non-disclosures concerned

> the quality and supply of water available on the property, the condition of the septic system available on the property, the total amount of square footage in the residence located on the property, the condition of the framework and the foundation of the residence on the property[,] and the location of the boundary lines for the property.

The case proceeded to trial by jury on April 19, 1993. Immediately before the start of trial, the trial court held a conference. Although no record was made of this conference, both parties agree on appeal that the trial court limited the scope of evidence to be received at trial. The court ruled that parol evidence would be admissible on three issues: (1) whether there was a functional well on the property; (2) whether potable water could be obtained from the spring intended to serve the property; and (3) whether the deed tendered by the Sellers described the same boundary lines as those contemplated by the contract.

After the Sellers had presented their case in chief, the attorney for the Buyers moved to strike the Sellers' evidence, asserting that the sum of $24,500 sought by the Sellers pursuant to the contract provision was an unenforceable penalty. The trial court overruled this motion, holding that the sum specified in the contract was not a penalty but liquidated damages, and that Paragraph 11, which imposed upon the defaulting party the responsibility for "any damages," included the liquidated damages provided for in the contract. The trial court ruled that, if the Sellers prevailed, they would recover $24,500 plus costs and attorney's fees.

The Buyers began their defense by calling Rodney Bankson. When his testimony apparently had been concluded, and outside the jury's presence, the Buyers proffered testimony that had been excluded by the court's pretrial ruling, concerning defects discovered in the crawl space of the house during the "walk through" inspection on June 10, 1992. After receiving the proffer, the trial court reversed its pretrial ruling and held that evidence of defects discovered during the "walk through" inspection would be admitted. The trial court explained that it interpreted Paragraph 8 of the contract to give the Buyers the right to conduct a further inspection on the date of the "walk through" before accepting the property. The trial court stated:

> These two sentences in paragraph 8 [of the contract] have to be read together . . . . It says, "The purchaser represents a satisfactory inspection has been made and agrees to accept the property in its present condition except as may be otherwise be [sic] provided." The "except as may be otherwise provided" is the next sentence, that is, that he has a right to walk through and inspect the premises prior to settlement[,] so the two have to be [read] together . . . . I think anything he discovered on the walk through to the extent that it relates to the condition of the premises is admissible . . . .

The trial court further explained that it based its ruling on "the plain language of the contract."

The Sellers' attorney objected to this ruling. He cited the doctrine of *caveat emptor* and noted that the Buyers had not asserted that they should be exempted from this doctrine, since they had not pleaded fraud or any material misrepresentation. The Sellers' attorney further argued that the court's interpretation of Para-

graph 8 of the contract was incorrect, stating that "the walk through is only for the purposes of comparing the property in [its] as is condition on the date you sign [a contract] and the date when you walk through."

Upon being recalled to the witness stand, Bankson (the Buyer) was permitted to testify that he had been unable to gain access to the crawl space of the house before the contract was signed, but that he inspected it on the date of the "walk through" inspection, when a farm manager showed him how to enter the crawl space through a trap door. Bankson testified that he observed moisture underneath the house and that he was unable to locate any means of crawl space ventilation. The Buyers then called other witnesses, including Richard Thornton, an architect, and Robert Foxwell, the electrical contractor who had accompanied Bankson during the "walk through," who testified regarding these and other conditions. The Sellers cross-examined these witnesses and put on evidence in rebuttal regarding the quality of the spring water, the condition of the floor joists, the boundaries of the property, and other matters.

The jury returned a verdict in favor of the Buyers. The trial court overruled the Sellers' motions to set aside the verdict and for a new trial.

On appeal, the Sellers contend that the trial court erred in failing to set aside the jury's verdict and in admitting evidence of conditions discovered during the "walk through." They argue that the trial court erred in refusing to set aside the verdict, because it misinterpreted the provisions of the contract and failed to apply the doctrine of *caveat emptor*. The Sellers contend that they also were prejudiced by the trial court's decision to alter its ruling regarding the admissibility of evidence after the Sellers had concluded their case in chief. The Buyers oppose these contentions, and they assign as cross-error the trial court's failure to strike the Sellers' evidence on the basis that the contract provision for the payment of $24,500 was unenforceable as a penalty.

We agree with the Sellers that the trial court incorrectly construed Paragraph 8 of the contract, entitled "Risk of Loss/Inspection/Walk Through." In reaching this conclusion, we apply the settled principle that the language the parties have chosen to use in a contract should be taken in its ordinary signification, and the plain meaning should be ascribed to it. *Marriott Corp. v. Combined Properties Ltd. Partnership*, 239 Va. 506, 512, 391 S.E.2d

313, 316 (1990). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962).

■ We hold that the meaning of the contract provisions contained in Paragraph 8 is plain and unambiguous. In such a case, this Court is not bound by the trial court's construction of the contract, because we have the same opportunity as the trial court to consider the words within the four corners of the instrument in question. *Christopher Assocs. v. Sessoms*, 245 Va. 18, 22, 425 S.E.2d 795, 797 (1993); *Wilson v. Holyfield*, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984).

■ Paragraph 8 incorporates several related contractual provisions designed to insure that the purchaser under the contract takes title to the property bargained for—that is, the property in the form and condition in which it existed on the date the contract was executed. In accordance with this design, Paragraph 8 allocates between seller and purchaser the risk that the condition of the property might be changed between the contract date and the date of conveyance. In addition, Paragraph 8 preserves to the purchaser the right to re-inspect the property in order to be assured that the condition of the property has not changed between the contract date and the date of conveyance. Paragraph 8 makes clear, however, that the property bargained for, which the purchaser "agrees to accept," is the property "in its present condition." We can construe "present condition" to refer to no other possible condition of the property at issue here than its condition on the date the contract was executed.

■ The trial court construed the "walk through" provision of Paragraph 8 as an exception to the Buyers' agreement to "accept the Property in its present condition," noting that this statement of acceptance is qualified by the phrase, "except as may be otherwise provided." We disagree. Such an interpretation would grant the purchaser the right to accept or reject the property based on its condition as disclosed by a "walk through" inspection, irrespective whether its condition was the same on the date of contracting. We will not construe the sentence that affords the purchaser the right to make a "walk through" inspection in this manner, because such interpretation would render meaningless the preceding

sentence, in which the purchaser "represents that a satisfactory inspection *has been made* of the property and the Purchaser agrees to accept the Property in its *present* condition" (emphasis added). *See Winn v. Aleda Constr. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984).

As the trial court recognized, Paragraph 8 contains a proviso allowing the purchaser(s) to condition their acceptance of the property upon the fulfillment of other contract terms, "as may be otherwise provided." An example of such a term is Paragraph 10 of this contract, which allows the purchaser to condition acceptance of the property on a satisfactory "perk test/soil analysis." Paragraph 10 operates as a condition of purchase, the non-occurrence of which will release both purchaser and seller from further obligations under the contract, because it specifically provides that if "the subject property fails said test, the contract is to be considered null and void."

■ There is no comparable provision releasing the parties from liability based on the results of the "walk through" inspection. A contract must be construed as a whole to determine the parties' intent with respect to specific provisions. *Hooper v. Musolino*, 234 Va. 558, 569, 364 S.E.2d 207, 212 (1988). Here, because the contract is not made contingent upon the Buyers' satisfaction with the "walk through" inspection, whereas other provisions specify that certain events occurring after the date of contracting may void the contract, we conclude that the parties did not intend that the "walk through" inspection be a condition that could void the contract.

■ As the Sellers have argued on appeal and before the trial court, in transactions for the purchase and sale of real property, the common law doctrine of *caveat emptor* usually will govern the rights of the contracting parties. This doctrine imposes on purchasers of real property the duty to use ordinary care in making inquiries and inspecting the premises before entering into a binding commitment to purchase. *Kuczmanski v. Gill*, 225 Va. 367, 369, 302 S.E.2d 48, 50 (1983); *Horner v. Ahern*, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967); *Costello v. Larsen*, 182 Va. 567, 571-72, 29 S.E.2d 856, 858 (1944).

■ In some circumstances, however, we have recognized exceptions to the doctrine of *caveat emptor*. For example, in *Armentrout v. French*, 220 Va. 458, 466, 258 S.E.2d 519, 524 (1979), we held that a purchaser may be relieved of the duty of inspection

when a seller's actions divert the purchaser from the inquiries or inspection that a prudent purchaser would otherwise make. *See also VanDeusen v. Snead*, 247 Va. 324, 329, 441 S.E.2d 207, 210 (1994). Further, in *Boykin v. Hermitage Realty*, 234 Va. 26, 30, 360 S.E.2d 177, 179 (1987), we held that "[t]he doctrine of *caveat emptor* 'affords no protection to a seller who makes false representations of a material fact, constituting an inducement to the contract, on which the buyer had a right to rely' " (quoting *Watson v. Avon St. Business Ctr., Inc.*, 226 Va. 614, 618, 311 S.E.2d 795, 798 (1984)).

In *Armentrout* and *Boykin*, however, the purchasers seeking the benefit of the exceptions had affirmatively pleaded the sellers' fraud, misrepresentation, or deceit. Here, the Buyers filed only a pleading denying that they had breached the contract with the Sellers or were obligated to pay damages.

■ We agree with the Sellers that the trial court erred in admitting evidence intended to prove that the Sellers misrepresented the condition of the property or prevented the Buyers from making an adequate inspection, when no such facts were pleaded. Pleadings are as essential as proof, and no relief should be granted that does not substantially accord with the case as made in the pleading. *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141, 277 S.E.2d 228, 229-30 (1981).

■ Moreover, the rule is well established that fraud must be clearly alleged in order that evidence intended to prove fraud may be introduced. " '[E]very litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense,' " and this rule is specifically pertinent when fraud is relied upon as a defense. *Chesapeake & O. Ry. v. Osborne*, 154 Va. 477, 506, 153 S.E. 865, 873 (1930) (quoting *City of Portsmouth v. Weiss*, 145 Va. 94, 111, 133 S.E. 781, 786 (1926)). *See also Koch v. Seventh St. Realty Corp.*, 205 Va. 65, 71, 135 S.E.2d 131, 135 (1964); *McClintock v. Royall*, 173 Va. 408, 415, 4 S.E.2d 369, 372 (1939); *Sands v. Bankers' Fire Ins. Co.*, 168 Va. 645, 657-58, 192 S.E. 617, 621 (1937).

■ As noted above, as a consequence of its ruling that Paragraph 8 granted the Buyers additional rights of inspection, the trial court held that evidence regarding conditions discovered during the "walk through" inspection was admissible. We hold that this ruling was in error, since it was based upon the trial court's erroneous interpretation of Paragraph 8.

The Buyers ask us to find that the Sellers waived their objection to the admission of evidence regarding the "walk through" inspection. They contend that, after the trial court permitted the Buyers to introduce this evidence during their defense, the Sellers put on their own evidence concerning the physical condition of the house and its crawl space. This additional evidence, the Buyers argue, went beyond mere rebuttal. Specifically, they point out that the Sellers presented the testimony of Jim Clark, who testified as to his work on the renovation of the house in the early 1980s and his examination of its crawl space on the day of trial. Unlike the Buyers' evidence of conditions existing on June 10, 1992, this testimony pertained to the house's condition at other times.

Citing *Snead v. Commonwealth*, 138 Va. 787, 121 S.E. 82 (1924), the Buyers argue that an objection to testimony may be waived when the objecting party has gone beyond "mere cross-examination of a witness or the introduction of rebuttal evidence" and has "introduced on his own behalf testimony similar to that to which the objection applies." *Id.* at 801-02, 121 S.E. at 86. We disagree with the Buyers that such a waiver took place here.

The rule of *Snead* invoked by the Buyers is well settled, but before it will be applied, " 'there must be some reasonable and just foundation for holding that there was in fact a waiver.' " *Whitten v. McClelland*, 137 Va. 726, 742, 120 S.E. 146, 150 (1923) (quoting *Washington-Virginia Ry. v. Deahl*, 126 Va. 141, 151, 100 S.E. 840, 844 (1919)). The rule will not be applied in distortion of its purpose. *Id.* Here, the Sellers made known to the trial court their objections to the court's interpretation of the contract, and to its evidentiary ruling predicated on that interpretation. In order to meet the Buyers' evidence of the condition of the crawl space introduced pursuant to these rulings, the Sellers were entitled to present evidence of their own on the same subject.*

We next consider the Buyers' assignment of cross-error. They argue that the trial court erred in failing to strike the Sellers' evidence on the ground that the contract provision for the payment of $24,500 by the defaulting party was unenforceable. The Buyers contend that this sum was intended by the Sellers to penalize the

---

\* In light of our holding that the trial court erred in its rulings concerning the related issues of the interpretation of the "walk through" provision, the application of the doctrine of *caveat emptor*, and the admission of evidence concerning the condition of the property, we need not consider the Sellers' further contention that they were severely prejudiced by the court's mid-trial modification of its pretrial ruling.

Buyers if they defaulted under the contract, and they note that the contract uses the term "forfeited," which usually implies a penalty. The Buyers further argue that $24,500 was far in excess of any actual damage the Sellers suffered, because the Sellers' evidence proved only that they expended about $1,400 for services such as a termite inspection and a physical survey.

In response, the Sellers argue that the trial court ruled correctly, because the court was required to uphold the intent of the parties, as evidenced in the terms of their contract and in their testimony showing that they fully understood the provisions for actual and liquidated damages. The Sellers further argue that the testimony given by Mr. Brooks and by Larry Fresh, the Sellers' real estate broker, shows that the liquidated damages provision was not punitive, but was intended to compensate the Sellers, in the event the Buyers later defaulted, for keeping their property off the market from February to June, 1992.

We agree with the Sellers that the provision for $24,500 damages does not constitute an unenforceable penalty. The use of a word such as "forfeited" is not determinative of whether a provision should be construed to impose a penalty. *See Stony Creek Lumber Co. v. Fields & Co.*, 102 Va. 1, 4, 45 S.E. 797, 798 (1903). Instead, "the construction of such stipulations depends upon the intent of the parties as evidenced by the entire contract viewed in light of the circumstances under which the contract was made." *Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745, 747 (1987).

An agreement between the parties to a contract, fixing the amount to be paid for loss which may result from breach of the contract, will be construed as a penalty when the damage resulting from a breach of contract is susceptible of definite measurement, or where the stipulated amount would be grossly in excess of actual damages. *Id.* The amount agreed upon will be construed as enforceable liquidated damages, however, when the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness, and when the amount fixed is not out of all proportion to the probable loss. *Id.* at 75, 353 S.E.2d at 746-47.

In this case, the evidence showed that the Sellers included the provision for $24,500 to be paid upon the Buyers' default, with the intention that this amount would compensate them for the time that would be lost in marketing their property. Mr. Brooks

(the Seller) was asked on cross-examination, "What does the sum of $24,500 represent besides 10% of the purchase price?" He responded, "Well, simply that. I, since the contract was taking this property off the market for four months, I had advice from two other realtors that it was valuable time and if there was any kind of default that I should be compensated for more than, well, should be compensated for 10% of the . . . ."

Further, the evidence showed that the Buyers fully understood and agreed to the contract term for the payment of a stipulated sum in the event of their default. Both Mr. and Mrs. Bankson at one time had been licensed real estate agents; thus, they presumably were aware of the binding nature of terms contained in a contract for the sale of real estate. In addition, Mr. Bankson testified on cross-examination:

Q. You see, one of the issues in this case, you realize, is that Mr. Brooks contends that that paragraph [Paragraph 2] says that you must pay $24,500 if you default. Do you agree?

A. If I default on the contract, that's true.

Q. You understood that it said that?

A. It looked that way.

Q. And you signed it and you still accept that that is the situation?

A. That's true, I'll say that.

We hold that the damages that might be sustained by the Sellers as a result of breach of the contract by the Buyers are not susceptible of definite measurement, but are uncertain and difficult to determine with exactness. Further, we do not believe that $24,500, representing 10% of the contract price of the Sellers' property, is "out of all proportion" to the probable loss experienced by the Sellers as a result of the alleged breach by the Buyers occurring in June 1992. We therefore hold that the trial court did not err in ruling that the damages provision was intended as enforceable liquidated damages. *See Taylor*, 233 Va. at 75, 353 S.E.2d at 746-47.

For these reasons, we will reverse the judgment entered in favor of the Buyers and remand this case for a new trial in accordance with the principles expressed in this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

JUSTICE WHITING, with whom JUSTICE HASSELL joins, concurring in part and dissenting in part.

I agree with the majority decision, with the exception of its ruling on the assignment of cross-error. I do not agree that the contractual provision requiring the buyer to pay $24,500 (10% of the purchase price) in the event of a default is a provision for liquidated damages.

I think that the principles articulated in *Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745, 747 (1987), should control our decision in this case. In *Taylor*, we said that "the construction of such stipulations [for liquidated damages] depends upon the intent of the parties as evidenced by the entire contract viewed in light of the circumstances under which the contract was made." *Id.* And, if a contractual provision for a fixed sum to be paid as damages for a contractual breach would be "grossly in excess of actual damages, courts of law usually construe such a stipulation as an unenforceable penalty." *Id.*

Moreover, in *Colonna Dry Dock Co. v. Colonna*, 108 Va. 230, 61 S.E. 770 (1908), we said that "where there is doubt whether the provisions of a contract constitute a forfeiture or a penalty, or liquidated damages, courts of equity strongly incline to that construction which declares it to be a forfeiture or a penalty, rather than liquidated damages." *Id.* at 240, 61 S.E. at 774. Given the policy underlying Code § 8.01-422 which permits a defendant in an action on a contract to "file a pleading, alleging any matter which would entitle him to relief in equity, in whole or in part, against the obligation of the contract," I would also apply the principle of equity articulated in *Colonna* to this action at law.

Paragraph 11 of the contract made the defaulting party liable for *actual* damages and "all expenses incurred," including attorney's fees, costs, and real estate broker's fees. And paragraph 4 provided that 10% of the purchase price, or $24,500, "will be *for-*

*feited* in the event of buyer default." (Emphasis added.). Although the use of the word "forfeited" does not render invalid what would otherwise be a valid provision for liquidated damages, I think that the word was used to reflect the Sellers' intent to penalize the defaulting Buyers given (1) the entire contract viewed as a whole, (2) the circumstances when the contract was made, and (3) Mr. Brooks's testimony quoted by the majority.

And, although the Sellers seek to justify their insertion of the $24,500 claim based on their real estate agent's advice that they should receive this amount as compensation for the loss of less than four months of the "best selling season," no such justification is found in the contract. Nor does the evidence indicate that the Sellers' rationale for this compensation was communicated to the Buyers when the contract was signed. Accordingly, I conclude that the evidence does not support a finding that, at the time of contracting, the parties intended the "forfeit[ure]" to be a provision for payment of liquidated damages for the loss of a part of the "best selling season."

Nor do I think that the Buyers' payment of $24,500 is justifiable as liquidated damages solely for the Sellers' loss of less than four months of what the seller's real estate agent testified was the "best selling season." The real estate agent did not indicate what sums, if any, the Sellers might have lost in withdrawing the property from the market during such a short period. And, in the event the Sellers sold the property, paragraph 11 of the contract gave them the right to claim any difference between the contract price and the price they ultimately received for the property as their actual damages, plus "all expenses incurred by the [Sellers]." This, of course, would include any losses and expenses incurred by the Sellers during the short period the property was off the market. In light of the fact that the Sellers reserved the right to claim actual damages *in addition* to the payment of $24,500, I conclude that this additional sum was grossly in excess of the Sellers' prospective actual damages for the loss of less than four months of "the best selling season."

Accordingly, I would reverse the trial court's judgment on this issue and enter a final judgment holding that the provision is unenforceable as a penalty or forfeiture.