244

GERHARD R. GRESSMAN, ET AL.

V.

LOUIS G. THIBAULT, SR., ET AL.

Record No. 940447

LOUIS G. THIBAULT, SR., ET AL.

V.

GERHARD R. GRESSMAN, ET AL.

Record No. 940453

March 3, 1995

Present: All the Justices

*Thomas E. Lacheney (Deal, Wells & Lacheney,* on briefs), for appellants. (Record No. 940447)

*Robert B. Hill (Donald E. Jeffrey, III; Hill & Rainey,* on brief), for appellees. (Record No. 940447)

*Robert B. Hill (Donald E. Jeffrey, III; Hill, & Rainey,* on brief), for appellants. (Record No. 940453)

*Thomas E. Lacheney (Deal, Wells & Lacheney,* on brief), for appellees. (Record No. 940453)

JUSTICE WHITING delivered the opinion of the Court.

These two appeals involve disputes between the sellers and purchasers of all the capital stock of a small corporation.

On December 5, 1991, Gerhard R. Gressman and Gloria M. Gressman, husband and wife (individually and collectively, Gressman), bought all the capital stock of Petersburg-Dinwiddie Aviation, Inc. (PDA) from Louis G. Thibault, Sr., and others (individually and collectively, Thibault).[1] As the lessee-operator of the Petersburg-Dinwiddie County Airport, PDA also provided aircraft repair, renovation, and other services to the public.

At closing, Gressman paid a part of the agreed purchase price of $560,482.88, executed a note for the balance of $400,000, took possession of the corporate assets, and began to operate the business. The note provided for the payment of "attorney's fees of twenty-five percent (25%) of any sum collected with the aid of an attorney-at-law."

According to Gressman, within three months of the closing, he discovered that Thibault had (1) concealed the presence of hazardous wastes dumped on the property by PDA prior to closing, and (2) misstated PDA's net worth. Gressman's discovery of the alleged misstatement of PDA's net worth resulted from an after-closing examination of PDA's records by William R. Dacey, Jr., a certified public accountant. Dacey's several adjustments to the balance sheet reduced Thibault's equity in PDA by $76,569.

In May 1992, Gressman filed a three-count bill of complaint against Thibault. In January 1993, Gressman amended and supplemented those claims by adding a fourth count seeking a rescission for breach of contract. Thibault filed responsive pleadings and a cross-bill seeking to recover the balance due on Gressman's note for the unpaid purchase price, plus interest, late charges, and attorney's fees.[2]

Following a four-day hearing, the chancellor found that Gressman had not proved the fraud allegations set forth in other counts, but that Dacey's testimony established Thibault's overstatement of his equity in PDA by $76,569. Accordingly, the

---

[1] Since neither side makes any distinction between the rights and liabilities among themselves, we refer to them individually and collectively by the names of the principal actor on each side.

[2] Thibault made other claims that are not involved in this appeal, and his judgment included a $25,601.08 award on those claims.

chancellor held that Thibault breached the contract. However, the chancellor merely offset the $76,569 amount against the amount he found to be owing under Thibault's $607,497.55 counterclaim and decreed a judgment for the net amount due of $530,928.55. The judgment included an award of attorney's fees of 25% of the *gross* amount due on the note without offsetting the $76,569 credit. Neither party appealed this decree.

Gressman filed a bill of review seeking a modification of the decree. Following a hearing, the chancellor denied Gressman's prayer for rescission of the agreement because of Thibault's breach of contract since he held that Gressman had not raised the issue at trial. However, the court granted Gressman's prayer to reduce the judgment by recomputing the 25% attorney's fees and interest thereon on the *net* amount due on the note after deducting the $76,569 credit. Each party filed a separate appeal.

■ First, we think that the court erred in ruling that Gressman had not asked for rescission either in his pleadings or at the hearing. Gressman's prayer for relief in the fourth count of his amended bill of complaint asked that "the Stock Purchase Agreement be rescinded and declared void ab initio." Additionally, the record reveals that he asked for this relief during the course of the proceedings before the court.

■ Next, we consider the merits of Gressman's claim for rescission. In doing so, our consideration is limited to the issue whether the chancellor's failure to grant rescission because of Thibault's overstated equity in PDA was an "error of law apparent upon the face of the record." Code § 8.01-623. And we also observe that we are not dealing with a claim for rescission for fraud since that issue was not appealed.

Gressman's principal argument is that paragraph 5.1 provides "a continuing, contractual right of rescission." As pertinent, the agreement of sale provides:

> 1.4 *Closing.* The closing of the purchase and sale of the Company Shares provided herein (the "Closing") will be at the office of [the] attorney for the Sellers . . . at 3:15 p.m., local time, on December 5, 1991. . . . Such date and time of Closing is herein referred to as the "Closing Date."

> 2. *Representations and Warranties of Sellers.*

Sellers, severally, represent and warrant to Buyer as follows:

. . . .

2.4 *Financial Statements.* . . .

At Closing, or shortly thereafter, a financial statement will be prepared as of November 30, 1991, prepared in accordance with the same accounting principles to which the Financial Statements have been prepared on a consistent basis which will demonstrate that:

(i) The Total Equity of the Company as of Closing shall not be less than [$147,474.00]. To the extent that the Total Equity is less than such amount, the Purchase Price and the Down Payment shall be reduced. To the extent that the Stockholder's equity is greater than such number, the Purchase Price and the Down Payment shall be increased.

. . . .

5.1 *Buyer's Conditions of Closing.* The obligation of Buyer *to purchase and pay* for the Company Shares shall be subject to and conditioned upon the satisfaction at the Closing of each of the following conditions:

5.1.1 All representations and warranties of Sellers contained in this Agreement and the Schedules hereto shall be true and correct at and as of the Closing Date, Sellers shall have performed all agreements and covenants and satisfied all conditions on their part to be performed or satisfied by the Closing Date pursuant to the terms of this Agreement.

. . . .

6.5 *Survival.* All of the terms, conditions, warranties and representations contained in this Agreement shall survive Closing for a period of one year, at which time all representations and warranties of Sellers shall become unenforceable.

(Emphasis added.)

We conclude that the operative contractual provisions, quoted above, are plain and unambiguous. Accordingly, we apply the well-settled principle that the language the parties chose "should be taken in its ordinary signification, and the plain meaning should be ascribed to it." *Brooks v. Bankson*, 248 Va. 197, 203, 445 S.E.2d 473, 476 (1994). Since Thibault overstated his equity, he breached the provisions of paragraphs 2.4(i), 5.1, and 5.1.1. However, we think that the chancellor granted the proper relief by crediting Gressman's obligation to Thibault with the amount of the overstated equity, as specifically provided for in paragraph 2.4(i).

We reject Gressman's contention that his contractual right to rescind survived closing for one year. According to Gressman, the emphasized language "purchase and pay" in paragraph 5.1 "contemplates [Gressman's] future duty of payment," and therefore implies a right of rescission after closing if any part of the purchase money note is unpaid. Again, the plain language of the agreement is to the contrary. Paragraph 1.3, entitled *"Payment of Purchase Price,"* provides that:

The Purchase Price shall be payable on the Closing Date as follows:

(i)   a "Down Payment" by cashier's check . . .
(ii)  by delivery of the Negotiable Promissory Note.

Applying paragraph 1.3, we conclude that the purchase price was paid when Gressman made the down payment and delivered the promissory note at closing. Accordingly, we find no merit in this contention.

And we also disagree with Gressman's contention that a post-closing right of rescission was created by the language of paragraph 6.5, dealing with the survival of "terms, conditions, warranties and representations." As applied in this case, we think that paragraph 6.5 simply provides Gressman with the post-closing remedy set forth in paragraphs 2.4, 5.1, and 5.1.1, quoted above.

For these reasons, we hold that Gressman was not entitled to rescind the contract.

This brings us to Thibault's appeal of the chancellor's reduction of his attorney's fees and judgment interest thereon. On brief, Thibault argued that Gressman's claim for credit could not be offset against his previously awarded judgment for those

amounts, since "a demand not reduced to judgment cannot be set off against a judgment." The fallacy in this argument is that Thibault's judgment was subject to modification by the bill of review filed in the same suit in which the judgment was rendered. Hence, we find no merit in this contention.

■ Next, Thibault maintains that the chancellor should not have considered the alleged miscalculation of the attorney's fees because Gressman failed to raise it in pleadings or in argument before the allegedly erroneous judgment was entered. The record discloses that Gressman raised the issue promptly after the error was made in the judgment by filing a petition to rehear. Accordingly, we think that the chancellor could consider the issue on a bill of review since it involved an error of law apparent upon the face of the record.

■ In oral argument, Thibault contended that the note itself precluded a reduction in the attorney's fees because of Gressman's "promise to pay without offset or deduction." No such argument was made in the brief and, therefore, it will not be noticed on appeal. Rules 5:17(c) and 5:27.

For these reasons, we will affirm the judgments in both cases.

Record No. 940447—*Affirmed*.
Record No. 940453—*Affirmed*.