## CIRCUIT COURT OF THE CITY OF NORFOLK

Justice

v.

Colen et al.

July 10, 2001

Case No. (Law) L00-1807

BY JUDGE JOSEPH A. LEAFE

This matter comes before the Court for a determination of whether the defendants (Purchasers) breached the contract for the purchase of residential real estate from the plaintiff (Seller) and, if so, what damages are recoverable by the plaintiff. The issue(s) before this Court are as follows: (a) did the Purchasers breach the contract for sale as the plaintiffs allege; (b) if so, what damages are the plaintiffs entitled to as a result of that breach; and (c) what, if any, is the effect of the "deposit" provision on the plaintiffs ability to recover damages?

In the interpretation and construction of contracts, Virginia adheres to the plain meaning rule. It is the duty of the court to construe contracts as they were made by the parties and to give full effect to the language they used, when that language is plain, clear, and unambiguous. *Marriott Corp. v. Combined Properties, Ltd.*, 239 Va. 506, 391 S.E.2d 313 (1990). Language used in a contract is to be given its ordinary meaning unless it appears from the context that a different, or more technical, meaning was intended. *Virginia Railway Co. v. Hood*, 152 Va. 254, 146 S.E. 284 (1929). The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words used. *Brooks v. Bankson*, 248 Va. 197, 445 S.E.2d 473 (1994). Generally, courts must conclude that the parties intended what the written instrument plainly declared. *Lenders Finance Corp. v. Talton*, 249 Va.

182, 455 S.E.2d 232 (1995). For example, in *Brooks v. Bankson,* the Virginia Supreme Court held that the trial court improperly construed the language of the contract at issue. 248 Va. at 205. The correct interpretation was that Paragraph 8 of the contract, entitled "Risk of Loss/Inspection/Walk Through," was not contingent upon the Buyers' satisfaction with the "walk through" inspection, especially where other provisions specifically addressed certain events that would void the contract. *Id.*

In the case at bar, one of the issues is whether the Seller made all of the repairs as requested by the Purchasers. The contract specifies that the Seller must correct any unsatisfactory conditions as requested by the Purchaser at their sole discretion. The provision regarding inspections reads as follows:

> If the results of such an inspection of the matters described above are unsatisfactory to Purchaser, in Purchaser's *sole and absolute* discretion, Purchaser shall provide Seller, within 3 business days of receiving the results of the inspection a written statement stating why Purchaser is not satisfied with the report.

*See Contract for Purchase, Exhibit A — Standard Provisions,* Par. G, "Inspections." The Seller then had the option to either correct said conditions at the Seller's expense or rescind the contract. *Id.* If the Seller failed to respond or stated an intent not to correct the conditions, the Purchaser had the option to terminate the contract. *Id.* Here, the Colens had the property inspected on July 27, 1999, within ten days of the execution of the contract as required by the contract. Thereafter, the Court finds that the Purchasers complied with the contract when Mrs. Colen offered Mr. Justice a copy of the conditions/repairs that they wanted as Purchasers, which Mr. Justice refused to accept. Mr. Justice assured her that the needed repairs would be made and that the repairs would not affect the completion of the contract.

From the testimony and evidence adduced at trial, it is clear to the Court that when the parties met on August 28th, Mr. Justice made it perfectly clear that he was not prepared to complete the requested repairs. According to both parties, the meeting ended badly over that sole issue. Mr. Justice told Mrs. Colen to make a modified list in order to separate the wheat from the chaff. A modified list was subsequently submitted but there were certain things that the Colens insisted upon. For example, Mrs. Colen requested that the bedroom windows be fixed in a way so that they could be opened.

Negotiations about the repairs went on until October 7, 1999, the day that the Colens notified the plaintiffs in writing that they were rescinding the contract. The Court notes that at no time did the Justices avail themselves of

the contract provision which permits the Sellers to pay $10,000 and let the Purchasers make their own repairs.

The Court finds that the Colens did not breach the contract. In fact, the breach occurred when Mr. Justice made it clear at the August 28th meeting that he would not make the requested repairs and required a "modified" list. Mr. Justice decided that the language granting the Purchaser "sole discretion" meant at the Purchaser's discretion but with his exceptions. That is not what was intended by the language "sole and absolute discretion" in the contract. While the parties and their attorneys negotiated over repairs for another thirty days, no new agreement was ever reached.

Even if the Colens had breached the contract, the Court finds that the $10,000 deposit to be retained by the Sellers in the event of default by the Purchasers is liquidated damages. In order for the Court to reach that decision, the Court will first discuss the applicability of the parol evidence rule.

The parol evidence rule addresses the admissibility of certain evidence when a written contract exists between the parties. The rule precludes introduction of evidence, i.e., an earlier writing, as to prior oral or written promises and contemporaneous oral promises once it is shown that the parties intended to integrate all promises in a final writing. However, parol evidence can be admitted to explain the final writing so long as the evidence does not contradict or vary the terms of the contract. *Prospect Devel. Co. v. Bershader*, 258 Va. 75, 515 S.E.2d 291 (1999); *Nutley Assoc. v. Dominion Bank*, 1991 WL 835228 (Fairfax County 1991). In *Young v. Schriner*, the Virginia Supreme Court stated:

> It is elementary that where the terms of a contract are thus susceptible of more than one interpretation, or an ambiguity exists, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract and to determine the object on which it was designed to operate.

190 Va. 374, 379, 57 S.E.2d 33, 35 (1950). Further, an "integration clause does not prohibit the admission of parol evidence which does not contradict or vary the terms of the real estate contract, but rather explains the meaning of the term [used]." *Bershader*, 258 Va. at 296.

The "deposit" provision at issue in this case reads in pertinent part:

In the event Purchaser breaches this Contract, the Deposit *shall* be paid to Seller, but such payment shall not preclude any other remedies available to Seller for such breach.

The Court finds that this provision is ambiguous in that the terms of this provision are susceptible to more than one interpretation. The provision is not labeled as "liquidated damages"; however, there is language indicating that the parties intended the deposit to be the amount of money damages recoverable in the event of breach. A provision to "liquidate damages" does not have to be labeled as such. Therefore, the Court may properly consider parol evidence to determine the intent of the parties at the time of entering into the contract.

In *Brooks v. Bankson*, the Supreme Court held that the provision for the payment of $24,500 by the defaulting party was enforceable as liquidated damages and did not constitute a penalty. 248 Va. at 208-09. Again, the Court stated that it is required to uphold the intent of the parties, as evidenced in the terms of their contract *and their testimony*. *Id*. The construction of such provisions in a contract "depends upon the intent of the parties as evidenced by the entire contract viewed in light of the circumstances under which the contract was made." *Id*., citing *Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745 (1987) (emphasis on *Brooks*). The Court in *Brooks* further stated that an agreement between the parties fixing the amount to be paid in the event of breach will be construed as a penalty only when the damage resulting from a breach is susceptible of definite measurement or where the stipulated amount is grossly in excess of actual damages. However, when the actual damages are difficult to ascertain with exactness and when the amount fixed is not out of all proportion to the probable loss, the provision will be construed as enforceable liquidated damages. Mr. Brooks, the seller, was asked on cross-examination what that sum represented besides 10% of the purchase price. He responded that it was simply a deposit and that he had been advised that if there was any kind of default he should be compensated for that amount. *Brooks*, 248 Va. at 209. Further, the Court stated that the evidence showed that the buyers understood and agreed to that term in order to compensate the sellers in the event of default. Therefore, the Court held that $24,500, which was 10% of the purchase price, was not "out of all proportion" to the probable loss experienced by the sellers as a result of the alleged breach by the buyers. *Id*. at 209.

In the present case, the parties disagree as to whether the $10,000 tendered as the "deposit" was intended to be liquidated damages in the event of default, thereby precluding the Sellers from pursuing other "monetary" damages. The Sellers argue that the parties were not concerned about default.

Plaintiffs assert that the only discussions between the parties about the deposit provision was related to what would happen if the home inspection turned out to be unsatisfactory, whereby the Purchasers had the option to terminate the contract. Plaintiffs maintain that there was no actual agreement between the parties to indicate that their intent was to cap damages in the event of default. The Court disagrees with the plaintiffs. Mrs. Colen testified that the deposit amount was intended to be liquidated damages in the event of default and they understood the term as such. The testimony of Mr. Van Buren regarding his discussions with Mr. Justice also support Mrs. Colen's testimony. Mr. Van Buren stated:

> Well, his discussion [Mr. Justice] with me [Mr. Van Buren] I believe was essentially that he felt he was happy to allow the Colens the opportunity to sign up and buy the house and if it turned out for whatever reason they didn't want to buy it that he would keep the deposit and call it a day. That's a paraphrase of a lot of different conversations, but that's the essence of what we discussed.

*Transcript of Trial Proceedings*, June 5, 2001, at 8. There was also a document that was prepared by Mr. Justice, prior to the executed contract now at issue, that used language specifying that all money paid by the Purchaser to the Seller shall be paid to Seller as "liquidated damages" in the event Purchasers default for any reason. *Trial Exhibit D-1*. That document was not executed but it is strong evidence that the deposit provision in the operative contract was in fact intended by the parties as liquidated damages. It was the harshness of this default provision to the Purchasers that led Mr. Van Buren to negotiate with Mr. Justice on behalf of the Purchasers about the inspection and repair provisions in the final contract. The Court would also add that it protected the Seller by limiting any requested repairs to $10,000. Therefore, the Court holds that the "deposit" provision was intended as liquidated damages in the event of default by the Purchasers.

In accordance with the foregoing opinion, the Court does not need to address further the damages issue.